ALBERT WATERS

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed April 21, 1898.*

1. CRIMINAL LAW—*testimony of an accomplice should be acted upon with great caution.* Whilst a defendant may be convicted on the unsupported evidence of an accomplice, yet such evidence must be weighed with extreme caution, particularly where the testimony of the accomplice is impeached by his own sworn evidence on a former trial.

2. SAME—*court will set aside conviction apparently resulting from passion or prejudice.* A court of review will set aside a conviction and direct a new trial where a consideration of the whole case leads to the conclusion that the jury were actuated by passion or prejudice in regarding the impeached evidence for the prosecution and in disregarding the unimpeached evidence for the defense.

3. SAME—*jury should be accurately instructed where evidence is close.* In criminal trials, where the evidence is close or doubtful, the jury must be accurately and fairly instructed as to the law, and error in an instruction which, standing alone, might be deemed unimportant, will work reversal where, considering the evidence and the particular circumstances, it is clear that the jury were misled thereby to the defendant's prejudice.

WRIT OF ERROR to the Circuit Court of Fulton county: the Hon. JOHN A. GRAY, Judge, presiding.

H. W. MASTERS, for plaintiff in error.

E. C. AKIN, Attorney General, (D. C. HAGLE, C. A. HILL, and B. M. CHIPERFIELD, of counsel,) for the People.

Mr. CHIEF JUSTICE PHILLIPS delivered the opinion of the court:

At the March term, 1897, of the Fulton county circuit court, the plaintiff in error, Waters, was jointly indicted with Frank Maple, Frank McGrew and Edward Farris for the burglary of the store of one N. S. Wright, at Canton, Illinois, on the night of the 11th or the morning of the 12th of January, 1897. Frank Maple, one of the defendants, pleaded guilty, and Frank McGrew and Edward Farris entered their pleas of not guilty, and on a trial before a jury were adjudged guilty. The defendant McGrew was sentenced to the State reformatory, and the defendants Farris and Maple were sentenced to confinement in the penitentiary at Joliet. At the September term, 1897, the plaintiff in error was arraigned upon the charge of burglary made in the indictment, and entered his plea of not guilty. A trial was had, which resulted in his conviction. A motion to set aside the verdict and grant a new trial was entered, which was denied by the court, and the plaintiff in error was sentenced on the verdict. He then sued out this writ of error, and assigns as error the improper admission of evidence, that the evidence does not warrant conviction, and that the court erred in instructing the jury.

No evidence was introduced connecting plaintiff in error with the commission of the crime save and except that of his three co-defendants, who were brought into court as witnesses and testified against him. The testimony of these three persons, Maple, Farris and McGrew, who were jointly indicted with plaintiff in error, standing alone, might be considered sufficient to warrant a conviction of the plaintiff in error. It appeared that the store of N. S. Wright, in Canton, Illinois, was burglarized on the night of January 11, 1897, and shortly there-

after Maple, McGrew and Farris were arrested, and an indictment charging them, with the plaintiff in error, with the commission of the offense, was found. An effort was made to arrest the plaintiff in error. He fled from the officer and went to the State of Iowa, but shortly thereafter returned to his home, where he was arrested. He states that he learned of his indictment whilst he was away and returned for the purpose of standing trial; that he believed that the officer had a subpœna for him, and that he did not wish to testify and sought to evade the service of the subpœna. Whatever indication of guilt might be evidenced by his fleeing from the officer his prompt and voluntary return tends to counterbalance. Maple, after he pleaded guilty, made a sworn statement, in which he stated that he alone was guilty of the commission of the offense. McGrew and Farris on their trial stated that they took no part in the commission of the offense and knew nothing of its commission of their own knowledge. After they had so testified and all three had been sentenced and imprisoned, McGrew was brought from the reformatory and Maple and Farris were brought from the penitentiary to testify against the plaintiff in error. They testified that in the early part of the evening of the 11th of January, 1897, they met the plaintiff in error and with him planned the commission of the burglary,—as claimed by Maple, at the suggestion of plaintiff in error himself. They state they were with him almost continuously from about half-past seven o'clock in the evening until an early hour in the morning, and that the burglary was committed by them with the plaintiff in error. In the cross-examination of Maple he was asked whether any inducement was held out to him to testify in the cause against the plaintiff in error, and he answered: "Well, you may not look at it in that way, but I did. I was called for, and the board gave me to understand that it would be pretty hard for me to convince them I was going to do right unless I did make some

move to show I was. They told me it would give you
a chance to square yourself with that community if you
were ever taken back, but if you won't we won't answer
for the consequences. Mr. McClaughrey's son told me
that Mr. Chiperfield came up there in response to a let-
ter written by McClaughrey's son. We had a talk after
he came there, and the only reference made to this case
was, 'Will you come down and testify against Waters?'
I said, 'Yes, sir,' and he said all right, and got up and
left." The McClaughrey referred to was the warden of
the penitentiary, and the Chiperfield referred to was the
State's attorney who prosecuted this case. The witness
Farris, on cross-examination, was asked, "Is it true, now,
that you are making the statements that you are now
making concerning Bert Waters in this burglary, because
of your fear, or because of your promise from the State
Board of Pardons, through Chiperfield or any one else?"
to which he replied, "Oh, I don't know; not from him."
He was then asked, "Influence from the board of par-
dons?" and answered, "Yes, I have been induced to change
my statement in regard to this transaction, within the
last few weeks, by reason of the hope that I might be
pardoned or paroled out of the penitentiary."

The testimony of these three witnesses, being in abso-
lute conflict, as it was, with what they had sworn to on
their own trial, was of doubtful credibility. Both Maple
and Farris stated that they had a hope of being pardoned
or paroled if they testified against the plaintiff in error
in this cause. The witness McGrew, in his statement,
denied any promise or inducement was held out to him
to testify in this cause. The testimony of these three
witnesses was the only testimony shown by the record on
which a conviction could possibly be had of this plaintiff
in error, and that testimony was to the effect that from
about half-past seven o'clock until an early hour in the
morning the plaintiff in error was with them, Maple,
Farris and McGrew, and during that time the offense was

committed. Six witnesses were called for the plaintiff
in error, viz., John Mattox, Roy Grimm, Mildred Ham-
ilton, Carrie Brown, Frank Dunlap and Susan Mattox,
three of whom, Mildred Hamilton, Carrie Brown and
Frank Dunlap, were in no way related to Waters. All
these witnesses testified that at about half-past seven
o'clock in the evening of the 11th of January the plain-
tiff in error was with them engaged in scrubbing the floor
of a hall in which a meeting was to be held by the Ameri-
can Volunteers,—a branch of the Salvation Army,—and
was so engaged until after nine o'clock that evening; that
when the work was completed, shortly after nine o'clock,
plaintiff in error accompanied them to the house of his
step-father; that he then left the house but returned in
about a half hour and remained engaged in conversation
and in singing, and playing on a mandolin, until after
eleven o'clock, when he retired, and, as testified to by
Roy Grimm, his half brother, and another witness, was
in the house until after one o'clock. There was no evi-
dence showing that he was absent except the testimony
of Maple, McGrew and Farris.

Whilst a defendant may be convicted on the unsup-
ported evidence of an accomplice, yet, where the testi-
mony of that accomplice is impeached by his own sworn
evidence at another time, it must be weighed with ex-
treme caution. The testimony of the witnesses that the
plaintiff in error was at work scrubbing the hall from
half-past seven to nine o'clock, and then accompanied
them to the house of his step-father, which he left for a
short time but returned there before ten o'clock and re-
mained there until after eleven o'clock, when he retired,
occupying the bed the balance of the night, is absolutely
willful and false if the testimony of Maple, McGrew and
Farris is true. Whilst the question of fact and the credi-
bility of the witnesses were for the jury, from this evi-
dence the guilt of the plaintiff in error must be held an
exceedingly close question of fact. With such conflict in

the evidence, and with its exceedingly close character, it was important that the jury should be correctly instructed.

In *Rafferty* v. *People,* 72 Ill. 37, it was said (p. 42): "If, when the evidence is all carefully considered and weighed, it appears that it is wholly wanting in respect to some necessary element of the crime, or if there is a conflict of evidence, and there is such a clear preponderance of evidence against the verdict as to suspend the judicial mind in serious doubt as to the guilt of the accused, then, in either case, we ought to grant a new trial. Questions of the credibility of witnesses are peculiarly for the jury, —as, for instance, suppose the conviction rests solely upon the evidence of an accomplice. If the jury choose to believe him we could not reverse when that fact was the only one affecting his credibility, although we may believe that faith should not be reposed in such a witness. But when a verdict rests solely upon the evidence of a single witness, and direct evidence of impeachment is introduced to such an extent as to lead to the conclusion that the jury were actuated by passion or prejudice in disregarding such impeaching evidence, then we ought to set the verdict aside and direct a new trial."

The court gave to the jury the following instruction:

"If you believe, from the evidence, beyond a reasonable doubt, that any witness for the defense has willfully and knowingly sworn falsely to any material fact in issue, then you have a right to disregard his entire testimony, except wherein it is corroborated by other credible evidence in the case."

This instruction calls the attention of the jury alone to the testimony of the witnesses for the defense. It was the duty of the jury to consider the testimony of all the witnesses, and if any witness had willfully and knowingly testified falsely, whether for the prosecution or for the defense, then the jury had a right to reject his testimony, unless it was sustained by other credible evidence.

While this instruction, in and of itself, might not be sufficient ground for reversal if taken in connection with one given for the defense calling the attention of the jury on the same subject to Maple, Farris and McGrew, it is otherwise when considered in connection with the eleventh instruction, which was:

"The court instructs the jury that one of the defenses relied upon by the defendant is that of alibi. You are further instructed, that although you may believe, from the evidence, that the movements of the defendant may have been accounted for at some part or portion of the time before and at the commission of the crime charged in the indictment, still, before this defense is entitled to consideration, it must appear that at the very time of the commission of the crime charged in the indictment the defendant was at another place so far away or under such circumstances that he could not, with ordinary exertion, have reached the place where the crime of the burglary was committed, so as to have participated therein."

According to the testimony of Maple he was in the store in which the burglary was committed about two hours, and after he came out and the money taken was divided, as he says, by Farris, McGrew, himself and the plaintiff in error, he then went to the home of McGrew, a few blocks distant, arriving there about four o'clock. According to his testimony, if true, the conclusion results that the burglary was committed between one and two o'clock and he left the store between three and four o'clock. The testimony of the witnesses Maple, McGrew and Farris accounts for the presence of the plaintiff in error with them from about seven o'clock until between three and four o'clock, and if their testimony is true he was with them all the time between the hours so designated. The testimony of the six witnesses for the plaintiff in error accounts for his presence from about seven o'clock until after nine o'clock, when he left the house

of Maddox and was gone not exceeding half an hour, and on his return his presence is there shown by five of the witnesses for the defense until after eleven o'clock, when he retired, and his presence is accounted for in his room by two witnesses, Grimm and Dunlap, until one o'clock. The evidence of these witnesses for the defense is unimpeached, except as contradicted by McGrew, Farris and Maple. The eleventh instruction is to the effect that although the jury should believe that the movements of the plaintiff in error were accounted for some part or portion of the time before and after the commission of the crime charged in the indictment, still, before that defense was entitled to consideration, it must appear that at the very time of the commission of the crime the plaintiff in error was at another place. This instruction, then, told the jury that before the evidence of an alibi was entitled to consideration it must appear that at the very time of the commission of the crime the plaintiff in error was in another place. If the testimony of McGrew, Farris and Maple with reference to the plaintiff in error being with them from about seven o'clock until between three and four o'clock is true, then the testimony of the six witnesses for the defense accounting for his presence with them from seven until after nine o'clock, and the testimony of the five witnesses accounting for his presence with them from about a quarter of ten until after eleven o'clock, and the testimony of two witnesses accounting for his presence with them from after eleven o'clock until after one o'clock, would necessarily be untrue. The jury would clearly have a right to take into consideration this testimony of the witnesses for the defense in determining the truth of the testimony of the three witnesses, Maple, McGrew and Farris, as to the plaintiff in error having been with them during the period of time from seven until one o'clock; and if their testimony was untrue in that regard, it would necessarily be rendered less credible as to the plaintiff in error being

with them at the exact hour of the commission of the crime,—during the period of time between one and two o'clock and three and four o'clock, when the crime was committed, as testified to by Maple. The eleventh instruction took away from the jury the right to consider this testimony, and when taken in connection with the fourth instruction was necessarily prejudicial to the plaintiff in error.

Taking into consideration the entire testimony in this case it cannot be said that there is not such a clear preponderance of evidence against this verdict as to suspend the judicial mind in serious doubt as to the guilt of the accused. Maple had been formerly convicted of a crime and served the term of his sentence in the reform school. Maple, McGrew and Farris were each impeached by their own admissions that they had sworn to a state of facts absolutely inconsistent with their testimony on the trial of this case. Maple and McGrew, by their own testimony, evidenced that they hoped to be rewarded for testifying, by being paroled or pardoned. Maple, McGrew and Farris were all three convicted of crime. These facts are such as are calculated to excite doubt as to whether faith should be reposed in such witnesses, and as the verdict rests solely on the testimony of the witnesses so impeached, in connection with the fact that the testimony for the plaintiff in error comes from unimpeached witnesses, the conclusion necessarily follows that the jury must have been actuated by prejudice or passion in regarding the impeached evidence of the witnesses for the prosecution and disregarding the unimpeached evidence of the witnesses for the defendant, and the verdict should be set aside.

Regarding the instructions as prejudicial and the verdict not warranted by the evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*