(No. 16428.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER SCHLADWEILER, Plaintiff in Error.

*Opinion filed February 17, 1925.*

1. CRIMINAL LAW—*competency of a child witness is determined by intelligence and understanding.* In determining the competency of a child as a witness the requirement is not one of age or religious belief but of intelligence and understanding.

2. SAME—*permitting child to testify rests in discretion of court.* Whether or not a child shall be permitted to testify, where objection is interposed on account of the child's age, is a matter resting largely in the discretion of the trial court.

3. SAME—*what determines whether question is leading.* The test of a leading question is whether it suggests the answer thereto by putting into the mind of the witness the words or thought of such answer, and questions merely directing the attention of the witness to the subject matter of the inquiry are not leading.

4. SAME—*necessity for leading question rests in discretion of court.* Leading questions, to be incompetent, must refer to material matters and occur where no necessity for them appears, and whether or not such necessity exists is a matter resting largely in the discretion of the trial court, an abuse of which discretion will amount to prejudicial error.

5. SAME—*what is meant by an alibi.* Where a person charged with crime proves that he was elsewhere at the time of the commission of the offense he is said to prove an alibi, the purpose and effect of which is to show that he could not have committed the crime or that it was highly improbable that he could have done so.

6. SAME—*what proof of alibi is sufficient—instructions.* Proof of an alibi need be sufficient only to raise in the minds of the jury a reasonable doubt as to the guilt of the defendant, such doubt arising from the fact that the evidence tends to show the impossibility, or the improbability, of the presence of the defendant at the commission of the crime, and instructions requiring a higher degree of proof are improper.

7. SAME—*when instruction defining alibi is proper.* An instruction defining the defense of alibi is proper where it states that to render such defense available the proof must cover the whole of the time of the commission of the crime, so as to render it impossible, or highly improbable, that the defendant could have committed the act, as such instruction merely defines an alibi and does not go to the measure of proof. (*Waters* v. *People,* 172 Ill. 367, distinguished, and *People* v. *Johnson,* 314 id. 486, criticised.)

DUNN and THOMPSON, JJ., specially concurring.
DEYOUNG, J., took no part.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. FREDERIC R. DEYOUNG, Judge, presiding.

LYONS & SHERRARD, (EDWARD J. LYONS, and ELWYN E. LONG, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (HENRY T. CHACE, JR., and EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiff in error was indicted in the criminal court of Cook county for taking indecent liberties with a child under the age of fifteen years, to-wit, of the age of eight years. The indictment consisted of two counts, the first charging indecent liberties, and the second, contributing to the delinquency of said child. On trial before a jury plaintiff in error was found guilty, and he brings the record here for review.

Plaintiff in error contends, first, that the testimony of the complaining witness, Katherine Freitag, and the other witnesses who were children, was incompetent because these witnesses did not understand the nature of an oath; second, that plaintiff in error was prejudiced by the leading manner in which these children were questioned; third, an instruction to the jury is complained of; and fourth, that

the evidence is not sufficient to prove the defendant guilty beyond a reasonable doubt. The defense is that of alibi.

Considering the first objection, the record shows that the complaining witness, Katherine Freitag, was eight years of age at the time of the trial, Dorothy Freitag was of the age of seven years, Winston Roeth was of the age of twelve years and Ernest Friedner of the age of·ten years. Previous to the taking of testimony these witnesses were examined before the court out of the presence of the jury, and their examination appears in the abstract. It is contended by plaintiff in error that this examination did not disclose that they understood the meaning or obligation of an oath, and in support of that contention his counsel cite the decisions of the courts of other States in this country and the rule as laid down in Greenleaf on Evidence, to the effect that in order to render a witness competent it is not sufficient that he believe himself bound to speak the truth from a regard to character or the common interest of society or from fear of punishment, but that it is required that the additional security afforded by an immediate sense of the witness' responsibility to God must appear. Such is not, however, the rule in this State. A test as to religious opinion or belief is no longer required in determining the competency of a witness. The requirement is not one of age or religious belief but of intelligence and understanding. (*Sokel* v. *People,* 212 Ill. 238; *Featherstone* v. *People,* 194 id. 325; *Moffett* v. *South Park Comrs.* 138 id. 620; *Hronek* v. *People,* 134 id. 139; *Draper* v. *Draper,* 68 id. 17.) The examination of these witnesses discloses that they are in the grades of the public schools in which children of average intelligence of their ages are usually found. Their answers indicate that they are children of intelligence commensurate with their ages. From the testimony of each of these children it was evident that they knew what it meant to take an oath to tell the truth. Whether or not a witness shall be permitted to testify where

an objection is interposed to his competency on account of age is a matter resting largely in the discretion of the trial court. (*People* v. *Karpovich,* 288 Ill. 268.) We are of the opinion that that discretion was not abused in this case and it was not error to permit the children to testify.

Nor do we believe that error was committed as charged in the second assignment of error,—that is, that the rights of the defendant were prejudiced by unnecessary leading of the witnesses on the part of the State's attorney. It is true that a number of questions were asked which called for answers either in the affirmative or negative, but as to the material parts of the examination it seems clear, from reading the abstract of the testimony, that these children were testifying from their recollection as to what occurred and not by reason of leading questions of examining counsel. The test of a leading question is whether it suggests the answer thereto by putting into the mind of the witness the words or thought of such answer. Leading questions, to be incompetent, must refer to material matters and occur where no necessity for them appears. Whether or not such necessity exists is a matter resting largely in the discretion of the trial court, an abuse of which discretion will amount to prejudicial error. Questions merely directing the attention of the witness to the subject matter of the inquiry are not suggestive or leading in any proper sense. *People* v. *Elliott,* 272 Ill. 592.

It is also urged that instruction No. 4 is erroneous. This instruction told the jury that before a defendant can avail himself of the defense of an alibi the proof must cover the whole of the time of the commission of the crime, so as to render it impossible, or highly improbable, that the defendant could have committed the act.

Some confusion seems to have arisen concerning instructions on the defense of alibi. Alibi is a Latin term, meaning elsewhere. When a person charged with crime proves that he was at the time of the commission of the

crime elsewhere he is said to prove an alibi, the effect of which is to lay the ground for the necessary inference that he could not have committed the act. (Bracton, 140.) By standard lexicographers that is available which has sufficient power, force or efficacy to produce a given result. Instructions defining the term "alibi" have been confused with those going to the measure of proof necessary on the part of the defendant to make such defense available. While the rule as to the measure of proof varies somewhat in different jurisdictions, it has always been the rule in this State that the proof of an alibi need be sufficient only to raise in the minds of the jury a reasonable doubt as to the guilt of the defendant, and those instructions have been condemned which require a higher degree of proof. In *Hoge* v. *People,* 117 Ill. 35, an instruction given told the jury that the burden of proving an alibi was on the defendant, and that it must be clearly and satisfactorily established before it can avail, where the evidence otherwise makes a clear case against him. This instruction was held to be erroneous because it required the defendant to satisfactorily establish an alibi and placed on him a burden little short of convincing the jury beyond a reasonable doubt. It was there held that if the jury, after considering the evidence of an alibi, had a reasonable doubt of the defendant's guilt he could not be convicted.

In *Waters* v. *People,* 172 Ill. 367, the jury were told that although they might believe that the movements of the defendant had been accounted for as to some part of the time before and at the commission of the crime charged, still, before this defense is *entitled to consideration,* it must appear that at the very time of the commission of the crime charged in the indictment the defendant was at another place so far away or under such circumstances that he could not with ordinary exertion have reached the place where the crime was committed so as to have participated therein. This instruction was held erroneous because it told

the jury that unless the evidence covered all the time it was not entitled to any consideration from them, and so took away from the jury the right to consider the testimony of witnesses as to the whereabouts of the defendant at or about the time of the commission of the crime.

In *People* v. *Fisher,* 295 Ill. 250, the same instruction given in *Waters* v. *People, supra,* was, in so far as it went to the measure of proof, held erroneous for the reason that it, in effect, told the jury that unless the evidence showed a complete and perfect alibi it was not entitled to consideration; that the rule of law as to the defense of alibi is the same as that for all other defenses and requires only sufficient evidence to raise in the minds of the jury a reasonable doubt of the guilt of the defendant.

It will be noted that the language of the instruction complained of in this case is substantially different. It told the jury "that before a defendant can avail himself of the defense of an alibi, the proof must cover the whole of the time of the commission of the crime so as to render it impossible, or highly improbable, that the defendant could have committed the act." This instruction goes entirely to the definition of an alibi and in nowise affects the measure or probative value of proof offered on the subject. The language condemned in the cases cited was that affecting the amount of proof required, and those cases in nowise discussed the definition of an alibi.

In *Creed* v. *People,* 81 Ill. 565, language in an instruction telling the jury, in effect, that an alibi must cover the whole of the time of the commission of the crime, so as to render it impossible, or very improbable, that the defendant could have committed the act, was held proper on the ground that it was not directed to the measure of proof required to find an alibi but that its purpose was to define what would amount to an alibi.

In *Briggs* v. *People,* 219 Ill. 330, an instruction told the jury that an alibi, to be *satisfactory,* must cover the whole

of the time of the transaction in question, so as to render it *impossible* that the defendant could have committed the act. It was there held that the instruction was erroneous, first, because it told the jury that the proof of an alibi must be satisfactory to them, whereas the law is that it must be sufficient to raise a reasonable doubt in the minds of the jury; that it was also erroneous in that it was too strict in requiring the proof to cover the whole of the time of the commission of the crime, so as to render it *impossible* that the defendant could have committed the crime, the court there saying: "We think an instruction defining the defense of alibi would be sufficient and proper if it simply stated, to render the defense of alibi available the proof must cover the whole of the time of the commission of the crime, so as to render it impossible, or highly improbable, that the defendant could have committed the act."

It will be noted that the instruction complained of in this case is in the exact language of the opinion of this court in the case just cited. The instruction here in nowise limits the jury in the consideration of the evidence. It is not directed to the measure of proof but defines what will amount to an alibi and designates the period of time to be covered by the proof. The whole purpose and force of an alibi is to show that the defendant could not have committed the crime or that it was highly improbable that he could have done so, for the one reason that he was somewhere else at that time. The reasonable doubt as to the guilt of the defendant arising out of evidence of a defense of alibi must come from the fact that the evidence tends to show the impossibility, or the improbability, of the presence of the defendant at the time of the commission of the crime. If the evidence as to alibi, though taken to be true, does not cover sufficient of the time at or before the crime to render the presence of the defendant impossible or highly improbable, then it proves nothing and is of no avail to him, as where A is charged with a murder committed be-

tween the hours of eight and eleven o'clock in the evening
and he offers proof that he was at the home of the witness,
one mile from the scene of the crime, between the hours
of four and six o'clock on that evening. Such testimony
does not constitute an alibi, for the evidence, though true,
does not tend to prove that it was impossible, or highly im-
probable, that he could have been at the scene of the crime
when it was committed, and such evidence does not render
the defense of alibi available to him. An instruction such
as the one in the case at bar, which defines an alibi but
does not go to the measure of proof, is correct.

In *People* v. *Johnson,* 314 Ill. 486, an instruction stated,
"to render the defense of an alibi available the evidence
must cover the whole of the time of the commission of
the alleged crime." We in that case said that this language
meant that there was no probative force in the testimony
of the witnesses as to alibi and that they were entitled to
no consideration, because they could not say the plaintiff in
error was under their personal observation for the whole
time, and this instruction was held to be error. The de-
cision rendered in that case was right, but what was said
as to the instruction concerning the defense of alibi is not
in accord with our previous decisions on the subject and
is not adhered to. The instruction in the case at bar gave
to the jury a proper definition of an alibi and was not er-
roneous.

It is finally urged most earnestly that the verdict is not
supported by the evidence, and a large portion of counsel's
brief of over seventy pages is devoted to quotations from
the evidence as it appears in the abstract. Such practice is
rarely of aid to the court when indulged in to any extent, as
the abstract is read in its entirety and the evidence quoted
is read in its relation to other evidence.

The indictment charges that the crime was committed
on August 14, 1923. Plaintiff in error was a Lincoln Park
policeman, in the city of Chicago. He had been employed

in that capacity five days. Previous to that time he drove
a milk wagon. Complaining witness, Katherine Freitag, tes-
tified that on the morning of the 14th of August, 1923, she
and her sister, Dorothy, were playing near the Summer-
dale Congregational Church, at the corner of Farragut and
Paulina streets, in the city of Chicago; that plaintiff in
error came out of an alley across the street and came up
to them and said "Hello!" that he was dressed in a new
policeman's uniform and wore a white cap and carried a
new gun case at his belt; that after talking to them he took
Katherine and Dorothy, and a tricycle or velocipede with
which they were playing, down the street to a vacant lot
which was grown up with high weeds; that on reaching
the lot he told them to bring the tricycle inside; that he
took down the complaining witness' bloomers, caused her
to lie on her back and rubbed her private parts, exposing
his own at the same time; that she cried, and he told her
if she cried he would take her to the police station; that
at that time Dorothy was near by, although witness didn't
know how far away she was; that he wanted her to put
his privates into her mouth but she would not. She then
testified, in effect, that he caused an emission from his pri-
vate parts and took his handkerchief and wiped it off; that
he then said he would go out and see if anyone was com-
ing; that he left them and did not come back, and that
she and Dorothy went home and told her mother. Doro-
thy testified to approximately the same facts, stating, also,
that plaintiff in error had pushed her over to one side in
the weeds where she could not see all that was going on
but did see him rub the private parts of Katherine. Both
these witnesses also testified that after they had told their
mother what occurred she called their father and the neigh-
bors, and that on that afternoon they went to the police
station, where they identified plaintiff in error as being the
policeman who had taken them into the vacant lot and com-
mitted the offense that morning.

315—36

Ernest Friedner testified to seeing the two girls on the church steps on the morning in question and that he saw a policeman come along, coming from the alley across the street from the church.  He identified plaintiff in error as the policeman who came out of the alley, stating that he saw him on the sidewalk by the church with the complaining witness and her sister; that when he saw him at the church he was but a short distance from him; that just before that he passed plaintiff in error on the street, and he paid particular attention to him after he saw him talking to the girls; that witness at that time left to play Indian with some boys down on the railroad track near by; that in the afternoon he went to the police station with the Freitags and the Roeths and identified plaintiff in error as being the policeman he saw with the girls on the sidewalk near the church.  His identification of the plaintiff in error was positive.

Winston Roeth testified that about a quarter to eleven o'clock on that morning he was in the alley near his home; that he saw a policeman coming through the alley near the church, walking in the direction of the church.  He noticed he had on a new uniform, with a white cap and the initials "L. P." on his collar, and that he had a new gun case; that he passed witness in the alley and looked at him as he went by; that in the afternoon of that day, after witness heard the story of the complaining witness, he saw a policeman on the street near his home and on the suggestion of his mother went out of the house and across the lot and came upon the policeman going by; that it was the same policeman he had met in the alley in the morning; that in the afternoon he saw the number 202 and a picture of Lincoln on the shield of his cap; that he went to the police station and identified plaintiff in error as the man he had seen in the alley on that morning and had met on the street in the afternoon.  Plaintiff in error's number was 202, and those

figures, together with a medallion of Lincoln, were upon a shield on his cap.

William Freitag, father of the complaining witness, testified to having been called home by his wife at noon on this day and that he went with the children to the police station, where they identified plaintiff in error, and later he went with them to the lot where they had stated the crime was committed and found the weeds growing very thickly and high on the lot; that they walked in forty or fifty feet, where the children pointed out a place where the weeds were trampled down.

Agnes Schiller, who lived in the neighborhood, testified that some time between 10:30 o'clock and noon of this day she looked out of a window of one of her up-stairs rooms in the direction of the vacant lot referred to and saw a policeman and two little girls with a velocipede in this lot; that she saw the weeds there and saw the three persons go into the weeds; that the policeman had on a white cap and a suit that looked new.

It appears from the testimony of the police officers that after this complaint was made plaintiff in error and two other Lincoln Park policemen in that neighborhood were brought in by another officer in a car and were taken before the children at the police station, where the latter identified plaintiff in error as being the policeman who had perpetrated the crime.

In support of the defense of alibi the plaintiff in error offered the testimony of employees of the National Milk Company, with which he had been employed prior to his going on the Lincoln Park police force. These witnesses testified, as did plaintiff in error, that he arrived at the place of the National Milk Company at ten minutes before eleven on the morning in question; that the dairy is about a mile and three-quarters from Farragut and Paulina streets, where the offense is alleged to have been committed, and that plaintiff in error remained there until after 12:30

o'clock; that he was there to secure the return of a cash bond he had put up while driver for the milk concern; that in order to do so it was necessary to check his book accounts. Plaintiff in error testified that he arose about ten o'clock on that morning; that he went to the dairy on the street car and that he did not pass the church in question or see these children. He denied categorically the testimony of the State's witnesses concerning the crime. The testimony of the State shows the offense was committed somewhere between the hours of 10:30 and 12:00 o'clock and it is argued that if the alibi be true it was impossible for plaintiff in error to have been at the scene of the crime at any time between 10:30 and 12:00 o'clock. Plaintiff in error lived in the neighborhood of the scene of the crime. One of the witnesses for the defense testified that he saw plaintiff in error between 10:15 and 10:30 o'clock on that morning not far from the scene of the crime. The identification of plaintiff in error by these children was positive. This testimony was all before the jury. It was peculiarly their province to determine who was telling the truth and whether or not the proof of alibi was sufficient to raise a reasonable doubt as to the commission of the crime by plaintiff in error. We are convinced, on a review of the record, that this court would not be justified in disturbing their finding in that matter.

There is no reversible error in the record and the judgment will be affirmed.        *Judgment affirmed.*

Mr. JUSTICE DEYOUNG took no part in this decision.

DUNN and THOMPSON, JJ., specially concurring: We agree with the conclusion reached in this opinion but not with what is said therein with respect to the instruction concerning the defense of alibi.