(No. 22617.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LEO GASIOR, Plaintiff in Error.

*Opinion filed February 15, 1935—Rehearing denied April 3, 1935.*

Herrick, J., dissenting.

John Owen, for plaintiff in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and J. J. Neiger, (Edward E. Wilson, and Henry E. Seyfarth, of counsel,) for the People.

Mr. Justice Farthing delivered the opinion of the court:

Plaintiff in error, Leo Gasior, (hereafter called the defendant,) was indicted jointly with Edward Matthews for the offense of robbery while armed with a pistol. They were tried and found guilty by a jury in the criminal court of Cook county and sentenced to the penitentiary. The defendant has sued out this separate writ of error.

The indictment charged that on December 16, 1933, the defendants assaulted Lillian Herrs, an employee of the

McLellan Stores Company, a corporation, at 7120 Grand avenue, Chicago, and took from her $862 in currency, the property of that corporation. On Saturday evening, December 16, 1933, about 8:45 o'clock, Harold Zeiler, an employee, attempted to close a rear door of the above mentioned store. A man pointed a gun at him and ordered him down-stairs. Zeiler obeyed and the other man remained at the head of the stairs. Shortly after this Zeiler saw two other men come down from the offices located on the balcony. He was unable to identify either of these two men, but he and Birger Johnson, another clerk, identified Matthews.

Lillian Herrs was the only eye-witness to the actual robbery. She identified Gasior as one of the men who forced her to lie on the floor while he and his companion robbed the safe. She testified that on the night in question she was sitting in a chair at her desk in the office located on the balcony of the store. She saw two men who stooped down and who held handkerchiefs in front of their faces. Both men pointed guns at her. They held the guns in their right and the handkerchiefs in their left hands. She made an effort to sound the alarm but was stopped by a motion from one of the robbers. The men ordered her to get down on the floor. She obeyed and covered her eyes as she was told to do and did not open them until the robbers left. The following Monday evening she saw Gasior in a "show-up" at the Cragin police station. She said she felt sick at the sight of the defendant. She left the room and a police officer gave her a drink of water. On her return to the first mentioned room she identified Gasior as one of the robbers. She said that on the night of the robbery Gasior wore a black fedora hat, which did not obscure his eyes although it was worn low on his forehead. She had to look down to see him but she saw his eyes. The handkerchief did not obscure all of his face. She saw his nose but could not see his

mouth. She was certain as to his identity. It was sought to impeach her by testimony she had given at the preliminary hearing, three days after the robbery. At that hearing she was asked, "Did you have a good look at him?" She answered, "I had a good look at his eyes." The witness did not remember whether the question was asked and the answer given, and did not remember the following question: "Is that the only way you identify him—by his eyes?" or that she answered, "Yes, sir."

It is insisted the testimony of Lillian Herrs is of little weight because she had an opportunity to see only that part of the defendant's face between his hat and the handkerchief, and further that her view was also restricted by the shadow of the hat-brim. The record does not show that there was such a shadow. It does show that there was a light above Miss Herrs, and that she looked down at the defendant, who was looking up at her. He was close at hand and nothing obstructed her view. It is insisted that she pointed out no distinguishing marks which assisted her to identify the defendant. It is not shown that the defendant had any unusual marks on his features. We can not agree that this witness' testimony would be more convincing if she had identified the defendant when she first entered the "show-up" room. Her statement that she became sick, left the room and got a drink of water is corroborated. There is nothing in the record to bear out the claim that she was prompted by the officers and then returned to make the identification. The circumstances under which the identification was made were before the jury, and, at most, they affect only her credibility. *People* v. *DeSuno,* 354 Ill. 387.

There is no great inconsistency in the testimony Lillian Herrs gave at the preliminary hearing and later at the trial of the defendant. She testified on the trial that she could see the defendant's nose on the night of the robbery, while at the preliminary hearing she said she made the identifica-

tion from his eyes. She seems to have been the only witness present when the money was taken. If a single witness gives testimony which is credible and the jury is convinced of the identity of the defendant and of his guilt beyond a reasonable doubt, the case will not be reversed because of the mere fact that there was only one identifying witness. *People* v. *Fortino,* 356 Ill. 415; *People* v. *Schanda,* 352 id. 36.

The defendant next contends that the court erred in permitting the State's attorney to cross-examine him on immaterial matters not brought out on direct examination and to pursue the same line of questioning against Matthews. On direct examination the defendant denied that he participated in the robbery and testified as to an alibi. The court, over objection of the defendant's counsel, permitted the State's attorney to ask him about his association with Matthews. Nothing was asked which tended to incriminate him or show that he was guilty of other crimes, but the questions and answers given showed that he knew Matthews. He denied being well acquainted with Matthews but admitted that he knew him in a business way. Later the People called a police officer who testified that he had seen the two defendants riding around together shortly before the robbery. Where there is nothing in the questions suggesting that the defendant was an habitual criminal and law-breaker or that he had ever been guilty of any previous crime, even though the cross-examination may have been extended somewhat beyond the scope of the direct examination, the error is not prejudicial. (*People* v. *Jaffe,* 339 Ill. 101.) The latitude of cross-examination of the defendant is controlled by the sound discretion of the trial court. (*People* v. *Jones,* 343 Ill. 291.) Evidence of the defendant's associations with Matthews immediately before the crime was competent. (*People* v. *Gormach,* 302 Ill. 332; *People* v. *Dale,* 355 id. 330.) The contention that the defendant was impeached on an immaterial point is not well taken.

The defendant objects to the following given instruction:

"The defendant, Leo Gasior, has offered in this case what is known in law as an alibi, namely, that he was not present at the time and place of the alleged offense but was at some other place at the time in question. Such a defense is a legal defense and must be considered by you in connection with all the facts and circumstances in this case.

"If you believe that the defendant, Leo Gasior, was not present at the time and place of the alleged offense but was somewhere else or if the evidence as to the alibi, considered with all the other evidence, creates in your minds a reasonable doubt as to the guilt of the defendant, Leo Gasior, then the defense of alibi entitles him to an acquittal.

"*On the other hand, before the defendant, Leo Gasior, can avail himself of the defense of an alibi, the proof must cover the whole time of the commission of the crime and the facts and circumstances in support of such alibi must be such that when considered in connection with all the other evidence in the case it creates in the minds of the jurors a reasonable doubt as to the truth of the charge against the defendant Leo Gasior.*"

The defendant contends that the italicized part of this instruction minimized or excluded the evidence introduced by him as to an alibi, since his evidence covered all the time during which the crime was committed. He relies on *People* v. *Frugoli,* 334 Ill. 324, where the defendant alone testified that he was at home at the time the crime was committed and we held the instruction there involved was subject to this objection. The decisions are to the same effect in *People* v. *Lacey,* 339 Ill. 480, *People* v. *Reno,* 324 id. 484, and *People* v. *Braidman,* 323 id. 37.

The testimony of the garage owner, William Wretsky, shows that the defendant, Leo Gasior, was at work at the garage at 1809 West Chicago avenue from 3:00 o'clock in

the afternoon of the day of the robbery until 6:00 o'clock, when Wretsky left the garage. Bennie Cesarz was Gasior's helper. He testified that Gasior was within sight of the witness from 4:00 that afternoon until 11:00 o'clock, with the exception of from five to ten minutes. The defendant himself testified that he worked at the garage from 4:00 o'clock in the afternoon until about 11:00 o'clock that night. As stated, the robbery was committed at 8:45 o'clock that night. The People contend that where the defendant has additional witnesses who testify to an alibi, the decisions in the *Frugoli* and *Reno cases* do not apply. However, in *People* v. *Lacey,* 339 Ill. 480, there were such additional witnesses and the decisions in the *Frugoli* and *Reno cases* were held to be controlling.

The cases of *Waters* v. *People,* 172 Ill. 367, and *People* v. *Fisher,* 295 id. 250, also involve instructions on the defense of alibi. In the *Waters case* the instruction required proof as to defendant's whereabouts at "the very time of the commission of the crime charged." The fact is mentioned that there was a sharp conflict in the evidence. The fourth instruction given in the case was also objected to. It mentioned only "any witness for the defense" in telling the jury how to treat his testimony if they believed from the evidence that such witness had sworn falsely. We held that Waters had been prejudiced by the giving of these two instructions. In the *Fisher case* we said, at page 259: "The other instruction was upon the question of an alibi, and informed the jury that 'such a defense, to be entitled to consideration, must be such as to show that at the very time of the commission of the crime charged the accused was at another place so far away or under such circumstances that he could not with any ordinary exertion have reached the place where the crime was committed so as to have participated in the commission thereof.' This instruction was in all probability very prejudicial to plaintiff in error. The substance of it is that his defense

of alibi is not entitled to any consideration unless the evidence shows a complete and perfect alibi, and the instruction was likely to be taken by the jury as an intimation from the court that the evidence on that question was not of that character to warrant them in considering it. The rule of law on the question of an alibi is the same as that for all other defenses. The defendant is only required to offer sufficient evidence on that question to raise in the minds of a jury of reasonable men a reasonable doubt of his guilt. He is entitled to full and fair consideration of his evidence upon any defense he may seek to make. This instruction is of the same character as one given for the People in *Waters* v. *People,* 172 Ill. 367, the giving of which was held by this court to be reversible error."

In the *Braidman case* we said: "If the testimony of these five witnesses was sufficient to raise a reasonable doubt in the minds of the jury as to Braidman's guilt he should have been found not guilty. The effect of the evidence as to Braidman's alibi was probably minimized by an instruction given to the jury, which, although the evidence of the alibi covered the whole of the time of the commission of the crime, placed the burden of proof on the defendant to so prove his alibi as to render the commission of the crime by him impossible or highly improbable, and informed the jury that unless such proof was made the defense of alibi was not available to the defendant." This decision was quoted from and relied upon in the *Reno case,* where the decisions in *People* v. *Thompson,* 321 Ill. 594, and *People* v. *Schladweiler,* 315 id. 553, are also referred to. In the *Reno* decision, at page 493, we said: "This was the only instruction given on the subject of alibi, and so differs from *People* v. *Thompson,* 321 Ill. 594, where the instruction was immediately followed by another as to the correct rule as to the burden and degree of proof required to render the defense of alibi available. It likewise differs from *People* v. *Schladweiler,* 315 Ill. 553, in that it is

couched in different language, and there was no question in that case as to the propriety of giving an instruction on the question of alibi. Here plaintiff in error's testimony covered the entire time of the crime. The instruction was an abstract proposition of law not pertinent to the facts of this case."

The *Frugoli* and *Lacey* decisions followed and relied on the decisions in the *Reno* and *Braidman cases*. The instructions condemned in the *Frugoli* and *Lacey cases* were identical. They contained no reference to the rule of law stated, in addition, in the instruction before us and contained in the additional instruction referred to in *People* v. *Thompson, supra,* telling the jury that if the evidence as to an alibi produced a reasonable doubt in the minds of the jury as to the defendant's guilt, he had maintained his defense of an alibi and should be acquitted. In the *Thompson case* the instructions before us were: "The court instructs the jury that before a defendant can avail himself of the defense of an alibi the proof must cover the whole of the time of the commission of the crime so as to render it impossible, or highly improbable, that the defendant could have committed the act, and unless the proof in a case covers the whole time, so as to render the commission of the crime by a defendant impossible, or highly improbable, then that defense is not available to such defendant." And, "The court instructs the jury that where an alibi is relied on as a defense, in order to maintain it it is incumbent on the defendant to support it by such facts and circumstances as are sufficient, when considered in connection with all the other evidence in the case, to create in the minds of the jury a reasonable doubt of the truth of the charge against the defendant." We said in the *Thompson case:* "The objection made to the first of these instructions is, that there was no reason for giving it because the evidence did cover the whole time and the giving of the instruction would cause the jury to believe that in the opinion of the

court there was some doubt as to whether the whole time was covered. In *People* v. *Schladweiler,* 315 Ill. 553, the first part of this instruction was held to be a proper definition of an alibi. The remainder of the instruction is not a statement of the amount of proof required but is merely a repetition of the first part in a slightly different form. It adds nothing to the instruction. The objection made to the other instruction is, that it is the duty of the jury to consider whatever direct testimony to an alibi there may be, and it is not incumbent on the defendant to support it by facts and circumstances. Whatever may be the direct testimony of an alibi it must be testimony to facts and circumstances, and the instruction is no more than that it is incumbent on the defendant to introduce evidence sufficient, when considered with all the other evidence in the case, to create in the minds of the jury a reasonable doubt of the truth of the charge against the defendant."

This matter is fully discussed in the *Schladweiler* decision, and what has been quoted from the *Thompson case* makes it unnecessary to quote here from that decision nor from *People* v. *Wynekoop,* (*ante,* p. 124,) where alibi is defined. Reference is made in the *Schladweiler* decision to an earlier case at page 557, as follows: "In *Hoge* v. *Peoplc,* 117 Ill. 35, an instruction given told the jury that the burden of proving an alibi was on the defendant, and that it must be clearly and satisfactorily established before it can avail, where the evidence otherwise makes a clear case against him. This instruction was held to be erroneous because it required the defendant to satisfactorily establish an alibi and placed on him a burden little short of convincing the jury beyond a reasonable doubt. It was there held that if the jury, after considering the evidence of an alibi, had a reasonable doubt of the defendant's guilt, he could not be convicted."

It does not appear in the *Braidman, Frugoli* and *Lacey cases* whether or not the other instructions contained the

rule covered by the last part of the instruction before us and by the second instruction quoted above from the *Thompson case*. But the instruction here complained of combines the two instructions covered by the decision in the *Thompson case*. The first part of it contains the definition of an alibi which was held to be correct in the *Schladweiler* decision. It should not be held to be error to correctly define the defense of alibi in an instruction where the evidence offered by the defendant covers the time when the crime was committed, for the fanciful reason that the definition itself might create an impression on the jurors' minds that the court was endeavoring to minimize defendant's evidence. The instruction here protects the defendant by telling the jury what quantity of proof is sufficient to establish this defense—*i. e.*, the same quantity that is sufficient in any case, only enough to raise in the minds of the jury a reasonable doubt of the defendant's guilt. There was no error in the giving of this instruction even though the testimony of the witnesses for the defense did cover the whole of the time. We do not adhere to what was said in the other cases we have referred to that is inconsistent with the views here expressed. The objections to this instruction are not well taken.

The defendant complains as to the refusal of certain instructions. A careful reading of the given and refused instructions fully demonstrates that the latter were covered by those given. There was no error, therefore, in this regard. *People* v. *Buzan*, 351 Ill. 610.

The record before us contains no error prejudicial to the defendant. It discloses that he received a fair trial in accordance with the law. The judgment of the criminal court of Cook county is therefore affirmed.

*Judgment affirmed.*

Mr. JUSTICE HERRICK, dissenting.