(No. 22985

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* NICK D'ANDREA, Plaintiff in Error.

*Opinion filed October 14, 1935—Rehearing denied Dec. 4, 1935.*

MICHAEL COSTABILE, and ARTHUR POORMAN, (ELWYN E. LONG, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, Nick D'Andrea, was indicted in the criminal court of Cook county for the crime of forgery. The indictment consists of two counts. Of these the first charges the defendant with forging the certification of a check with the intent to prejudice the Sanitary District of Chicago. The second charges him with uttering a false check, knowing it to be false. A jury found D'Andrea guilty as charged. Motions for a new trial and in arrest of judgment were denied and he was sentenced to imprisonment in the penitentiary. The defendant prosecutes this writ of error to review the record.

The check in question was for $50,000, payable to the order of "Clerk of Chicago Sanitary Dist.," drawn on the Citizens National Bank of Chicago Heights and signed by

the defendant. The face of the check bore the following certification: "Certified $50,000.00, #1265, Mar. 28, 1934, Citizens National Bank of Chicago Heights, Ill.—By H. Miedell, A. Cashier." The certification and Miedell's signature were forged. The board of trustees of the Sanitary District of Chicago advertised that proposals or bids for the construction of the West Side intercepting sewer, contract No. 10, a project under the supervision of the Federal Emergency Administration of Public Works, would be received at the office of the clerk of the sanitary district until 1:30 P. M. on March 29, 1934. It was made a condition that each bid be accompanied by $50,000 in money or a cashier's check in the same sum drawn on a responsible bank doing business in Chicago and made payable to the order of the clerk of the Sanitary District of Chicago. On March 29 the construction firm of D'Andrea & Valente, in which the defendant was a partner, submitted its bid to the sanitary district for the construction of the improvement mentioned. This proposal bore not only the firm signature but also the individual signatures of Nick D'Andrea and Alex Valente and was supported by an affidavit of the former. Accompanying the proposal was the forged check for $50,000. On March 28 the defendant had obtained the certification of a check for $5000 drawn on the same bank. A receipt bearing the number 1265 (the certification number which also appears on the check for $50,000) was signed by the defendant when the certified check for $5000 was delivered to him. Subsequently this check was returned by the defendant and the bank credited it to his account. During the interval between the certification of the check for $5000 and the filing of D'Andrea & Valente's bid with the clerk of the sanitary district a spurious certification stamp was made and applied to, and Miedell's name forged on, the check for $50,000.

John J. Muza, cashier of the Sanitary District of Chicago for five years, testified that it was a body politic and

a municipal corporation and named its president and trustees. According to his testimony the form of proposal, specifications, contract and bond for the sewer project, together with the bid of D'Andrea & Valente, marked People's exhibit 1, (referred to in the defendant's testimony as the "book,") and the check for $50,000, were part of the records and files of the municipal corporation named. The witness obtained them from its files.

The H. Miedell whose name appeared on the check for $50,000 was an assistant cashier of the Citizens National Bank of Chicago Heights. He testified that on March 28, 1934, the defendant requested him to certify a check for $5000 payable to the order of the clerk of the Chicago Sanitary District; that he informed D'Andrea his balance was insufficient to cover the certification sought; that the latter thereupon obtained sufficient cash from his safety deposit box to make a balance of $5000, and that the defendant then signed a check for this amount. The witness certified the check for $5000. Miedell testified further that he did not certify the check for $50,000; that the signature "H. Miedell" was not genuine; that the certification on this check was smaller than the one made by the bank's certification stamp, and that the impression was not made by the bank's stamp.

C. A. Inman, a Federal special agent of the Division of Investigation of the Public Works Administration, was assigned to an investigation of the West Side intercepting sewer contract. He testified that he first saw the check for $50,000, together with the bids presented by various contractors on the particular project, in the board rooms of the sanitary district. In response to a request of the witness the defendant called at his office in Chicago in the early part of April. The witness and Norman Moe, special agent in charge of the Chicago office of the Division of Investigation, talked with the defendant on this occasion. Inman testified that he made an inquiry of the de-

fendant with respect to the check he had submitted to the sanitary district; that the latter replied it was for $50,000; that he then informed D'Andrea an investigation of his bank account had disclosed the certification of only one check for him, namely, for $5000, and that the defendant said, "I guess you have got me." According to Inman the defendant added that he alone was to blame; that his partner knew nothing about the forgery; that he went to the Noble Stamp Works in Chicago, had a stamp made, applied it to the check for $50,000 and also forged Miedell's name.

John J. Muza was recalled as a witness by the defendant. He stated that he did not personally receive People's exhibit 1 and the check for $50,000 from D'Andrea; that they were presented to and accepted by the office of the clerk of the sanitary district, but that he did not know who presented them.

The defendant was forty-two years of age at the time of the trial and had been a sewer contractor since 1916. He testified that he had done work for the sanitary district in 1930 and 1931; that about March 20, 1934, he conferred with one Schwoeffermann, a vice-president of the Citizens National Bank of Chicago Heights, with respect to obtaining a loan in order to have a check for $50,000 certified, to submit with his bid on the West Side intercepting sewer project; that he informed the banker he would pledge certain collateral, and that the latter assented. It appears from the defendant's testimony that he returned to the bank about noon on March 28, taking with him two checks which he had signed in his office; that he handed the check for $5000 to Miedell and the one for $50,000 to Schwoeffermann, together with the "book"; that Schwoeffermann refused to certify the check for $50,000 and gave it back to the witness; that he took the book and this check, returned to his office, dropped the book on his desk and went to Kankakee to visit a friend;

that when he returned to his office in the evening the book was missing, and that he had not seen it since. He specifically denied forging the certification on the check for $50,000 and delivering either the book or the check to the sanitary district. In addition to admitting that he told Inman and Moe, "I guess you have got me," he stated that when interrogated by them as to who certified the check, he answered, "Well, I will take the rap, that's all there is to it. I don't know." On cross-examination the defendant testified that when he went to the bank on March 28 he knew he did not have $50,000 on deposit; that when he sought to have his check for $5000 certified he informed Miedell it was for a contract with the sanitary district; that he had in mind, however, another job, namely, the South Side treatment works; that the bidding on this project was postponed, and that he did not use the check. He denied making out the check for $50,000 and buying a certification stamp. Likewise, he denied informing Moe and Inman that he purchased a stamp and put it on the check. He admitted, however, that the certification number on each check is 1265. He also testified that one Sendry, apparently connected with the partnership, delivered the bid of D'Andrea & Valente to the sanitary district.

In rebuttal, Miedell testified that Schwoeffermann was not present at the bank when the check for $5000 was certified; that the witness and one Matlony, also an assistant cashier, handled the certification of checks, and that the records of the bank from March 8 to April 13, 1934, showed that no check for $50,000 payable to the clerk of the Chicago Sanitary District and signed by the defendant had been certified.

Bernard J. Schwoeffermann, the executive vice-president and cashier of the bank, likewise stated that he was not present when the defendant was in the bank on March 28, 1934. He testified that he did not have any conversation with D'Andrea on that day, or at any other time,

with reference to certifying a check for $50,000 payable to the sanitary district; that in the first part of March the defendant had, however, solicited a loan of $50,000; that the witness refused to make the loan for two reasons, namely, the legal limit of borrowing in the bank was $12,500, and the collateral proffered consisted of special assessment bonds which were in default, and, in consequence, ineligible as security; that the defendant renewed his request a week later, insisting he was entitled to a loan, but was again refused, and that the witness never received or agreed to accept any collateral from the defendant as security for a loan of $50,000. Schwoeffermann stated that he had not authorized anyone to endorse the certification on the check "certified, $50,000." He stated that in his opinion the stamp on the check was not the stamp used by the bank.

The principal contention of the defendant is, that there is a fatal variance between the allegations of the indictment and the proof with respect to the payee named in the forged instrument. This contention is based on the fact that the check is made payable to the "Clerk of Chicago Sanitary Dist." and not to the "Clerk of the Sanitary District of Chicago." To constitute the offense of forgery, under section 105 of the Criminal Code, there must be a false writing or alteration of an instrument, the instrument as written must be apparently capable of defrauding, and there must be an intent to defraud. (*People* v. *Reichert,* 357 Ill. 205; *People* v. *Katz,* 356 id. 440; *People* v. *Dwyer,* 342 id. 105; *People* v. *Pfeiffer,* 243 id. 200; *Goodman* v. *People,* 228 id. 154.) The statute makes no distinction between making, altering or counterfeiting an instrument with intent to prejudice, and uttering, publishing and passing as true and genuine any such forged instrument with intent to damage or defraud, knowing the same to be false, altered, forged or counterfeited. Every person who is guilty either of making and forging or uttering and

passing, or attempting to utter and pass, under the conditions named in the statute, is deemed guilty of forgery. (*People* v. *Katz, supra; People* v. *Pfeiffer, supra.*) An instrument, to form the basis of a charge of forgery, need not necessarily be in due legal form. It suffices if the instrument, supposing it to have been genuine, might be prejudicial. (*People* v. *Dougherty*, 246 Ill. 458.) Where a forged instrument is uttered, the intent to defraud may be presumed or inferred from proved facts and circumstances surrounding the transaction. (*People* v. *Meyer*, 289 Ill. 184.) Nor is it material whether anyone is actually defrauded. if the intent to defraud is shown. *People* v. *Katz, supra; People* v. *Meyer, supra.*

The indictment in the present case charges not only forgery but also the utterance of a check for $50,000 with a forged certification, payable to the order of the "Clerk of Chicago Sanitary Dist.," meaning thereby to the order of the "Clerk of the Sanitary District of Chicago, a body politic and corporate," with intent to prejudice, damage and defraud the Sanitary District of Chicago. The correct legal name of the municipal corporation is, "The Sanitary District of Chicago." The defendant's argument is that the indictment showed upon its face the instrument upon which it was predicated was void because the payee of the check, the Chicago Sanitary District, was fictitious. It is asserted that the judgment must be reversed, since the indictment charges the injured party to have been the Sanitary District of Chicago and the proof shows it was a non-existent payee, namely, "The Chicago Sanitary District." This argument cannot be sustained. The check for $50,000 containing the forged certification was filed with the Sanitary District of Chicago when the bid of D'Andrea & Valente was submitted. Manifestly, the certification was forged with the intent to defraud that municipal corporation. The check was of such a character as might be used for the purpose of defrauding, and the de-

fendant's criminal intent was sufficiently established when it was filed with the clerk of the sanitary district. There is no question but that the sanitary district, in the event the defendant's bid had been accepted, could have looked to the check for reimbursement for its damages if the defendant refused to perform.

The defendant further argues that evidence to sustain the charge that the Sanitary District of Chicago is a body politic and corporate is wanting. The cashier of the sanitary district testified, without objection, that it was a body politic, a muncipal corporation, and named its president and trustees. The form of proposal used by the defendant and other contractors who submitted bids on the sewer improvement refers to the board of trustees of the Sanitary District of Chicago, and names the president, chief engineer, attorney and clerk. Reference is also made to bids being received by the clerk at the corporation's offices in Chicago and to their public opening at a meeting of the board of trustees. Obviously, proof of the existence of the corporation is not wanting. Moreover, the Sanitary District of Chicago was organized under an act entitled, "An act to create sanitary districts and to remove obstructions in the Des Plaines and Illinois rivers." (Laws of 1889, p. 125.) It was incorporated by a public statute, and judicial notice will be taken of its character and its corporate existence.

The defendant contends that incompetent testimony was admitted over his objections. In particular, it is insisted that, owing to the absence of testimony by the person who actually received People's exhibit 1 and the check for $50,000, the evidence fails to prove that they were legally filed with the sanitary district. The cashier stated that the bid of D'Andrea & Valente and the check were part of the records and files of the sanitary district and that he obtained them from the corporation's offices. When called as the defendant's witness, Muza added that the ex-

hibit and the check were accepted by the office of the clerk, although he did not know who actually presented them for filing. Inman, the Federal special agent, testified that the bid and the check were in the board rooms of the sanitary district. An examination of the requirements for bidding and instructions to bidders discloses not only that proposals were to be received by the clerk, but also that each bid had to be accompanied by cash or a cashier's check for $50,000 payable to the clerk of the Sanitary District of Chicago. The defendant admitted that his firm submitted a bid on the project for the West Side intercepting sewer, that he signed it, and that Sendry, previously mentioned, delivered it to the sanitary district. Furthermore, the bid of D'Andrea & Valente contains this statement: "The undersigned hereby accepts the invitation of said sanitary district to submit a proposal on said work on the express understanding that he will not cancel or withdraw this proposal and that the sanitary district will hold this proposal and the sum deposited herewith until all the proposals submitted have been canvassed." The evidence clearly shows that People's exhibit 1 and the check containing the forged certification were legally filed with the Sanitary District of Chicago, either by the defendant or with his knowledge and acquiescence. They could not have come into the hands of the clerk of the sanitary district except by delivery. When all the facts and circumstances in evidence are considered, the jury was fully warranted in believing that the exhibit and the check were delivered to the sanitary district by the defendant or someone at his instance.

Complaint is made that the trial court erred in giving and refusing instructions. It is urged that the instruction on the subject of the presumption of innocence is erroneous. Section 67 of the Civil Practice act, made applicable to this case by Rule 27 of the rules of this court, requires that specific objection to instructions must be made to preserve the point for consideration by a court of review. An ex-

536

amination of the record fails to disclose any objection made or any exception taken to the giving of this instruction. The defendant is, therefore, in no position to urge that the giving of the instruction was erroneous, as no question of its propriety is preserved for review. (*People* v. *Reeves,* 360 Ill. 55; *People* v. *Schneider,* 360 id. 43.) Refused instructions 1 and 3 were fully covered by those given. Repetition is unnecessary, and there was no error in refusing these instructions. *People* v. *Gasior,* 359 Ill. 517; *People* v. *Buzan,* 351 id. 610; *People* v. *Drewell,* 348 id. 320.

The final contention of the defendant is that the evidence does not sustain the conviction. The evidence discloses that the partnership of which the defendant was a member submitted a bid to the Sanitary District of Chicago on a sewer contract; that $50,000 in money, or a cashier's check for that amount, was a prerequisite to the consideration of such bids; that the defendant unsuccessfully attempted to borrow money from the Citizens National Bank of Chicago Heights in order to arrange for certification of the necessary check; that a check for $50,000 bearing his admitted signature as maker and a spurious certification was filed with the clerk of the sanitary district; that on the same day that the defendant claims to have taken the check for $50,000 to his office he obtained certification of a check for $5000 at the bank named, and that the forged certification bore the same stamp number as the genuine certification. Furthermore, the defendant made admissions to the investigators for the Public Works Administration to the effect that he obtained a certification stamp and forged Miedell's signature, adding that he was caught and would take the consequences. At the trial he also admitted he had informed Inman and Moe he had bought a stamp and signed Miedell's name. The defendant insists, however, that the judgment of conviction rests upon his admissions, and invokes the familiar rule

that the *corpus delicti* cannot be established by the admission or confession of the defendant, alone. The rule can not avail the defendant, for there is abundant testimony in the record, in addition to his admissions, to sustain the conviction.

We see no reason for disturbing the judgment, and it is therefore affirmed. *Judgment affirmed.*