(No. 12856.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. STANLEY JARECKI, Plaintiff in Error.

*Opinion filed December 17, 1919—Rehearing denied Feb. 4, 1920.*

1. CRIMINAL LAW—*when verdict of jury will not be disturbed.* The verdict of a jury on a question of fact will not be disturbed unless it is palpably contrary to the weight of the evidence.

2. SAME—*what testimony as to condition of witnesses at preliminary hearing is improper.* Testimony of the police officer who arrested the accused that two of the witnesses who testified for the defendant on the trial were not permitted to testify on the preliminary hearing because they were intoxicated is improper but is not necessarily ground for reversing the judgment of conviction.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

B. J. PRYSTALSKI, and MAURICE I. GREEN, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE CARTER delivered the opinion of the court:

Plaintiff in error was convicted in the criminal court of Cook county of statutory rape and sentenced to the penitentiary for eight years.

This case has been tried three times in the criminal court. The first time the jury failed to fix the penalty after finding plaintiff in error guilty, and on that account the trial judge granted a new trial. At the second trial the jury disagreed. The third trial resulted in the judgment on the verdict from which this writ of error was sued out.

The principal argument of counsel for plaintiff in error is that the evidence fails to support the verdict. On Sunday, December 30, 1917, Mary Hydzik, a girl thirteen years of age, went to the home of plaintiff in error in Chicago

to exchange some books. Her testimony is that she went there in the afternoon and that plaintiff in error asked her to make his bed before giving her the book and told her he would give her twenty-five cents for the work; that she finally consented to make the bed, and while so doing plaintiff in error came in the room and closed the door, threw her on the bed and had sexual intercourse with her; that she felt sick and went home but did not make any complaint to her mother, telling her, in answer to inquiries, that she had not been doing anything. She testified that the next morning when her mother went to wash the clothes she discovered blood on the daughter's underclothes and asked her about it and the daughter told what had happened; that the mother then sent for plaintiff in error and he came over, the two houses being nearly across the street from each other, and the mother charged him with the offense; that he denied doing anything and said the stains were due to menstruation; that he then called Dr. Weitzinski, whom he knew, to examine the girl. The doctor, Mrs. Hydzik and her daughter and plaintiff in error are all of Polish nationality. The doctor examined the complaining witness and testified on this trial that he found from said examination that she was menstruating; that the hymen was intact in a virginal condition and that in his opinion there had been no sexual penetration. He, however, said on cross-examination that the hymen had the appearance of a tear to some extent. He testified that he told the mother there was nothing wrong with the girl, whereupon the mother became excited and said he did not know his business. Two men testified that they were at plaintiff in error's house the day when the prosecuting witness was there and saw her make the bed, but it was in the morning and not in the afternoon; that the bed-room doors were open and they were there all the time she was there but did not see plaintiff in error go into the bed-room where the girl was and heard no complaint from her. The

291— 6

plaintiff in error's son and another man testified that plain-
tiff in error was at the son's house from about twelve o'clock
noon until about seven in the evening of the day in ques-
tion, coming for dinner and playing cards during the after-
noon.   The police officer who made the arrest testified that
he talked with plaintiff in error with reference to the charge,
and plaintiff in error said that he had pushed the girl onto
the bed but that he was just fooling and did not have im-
proper conduct with her.   The policeman stated that while
plaintiff in error could not understand English very well,
he was sure he understood what they were talking about
and understood the answer that was made.   Plaintiff in er-
ror testified that he did not do anything improper to the
girl; that it was in the morning and not in the afternoon
that she came; that when he went over to the Hydzik
house the next morning the mother told him that if he
would pay her $500 she would make no trouble, and he re-
plied that he would not give her 500 pennies; that at his
suggstion Dr. Weitzinski was called and examined the girl
and stated in his presence to the mother that the daughter
only had her menstrual period.   The doctor also testified
that the mother said that she would make plaintiff in error
trouble unless he paid her $500.   The mother denied ask-
ing for money from plaintiff in error, and the daughter also
stated that she did not hear her mother make such demand.
The mother had a physician (Dr. Kelly) examine the com-
plaining witness, and at his suggestion she was also exam-
ined by Dr. Seippel, who was a city physician and gave
much of her time to investigating complaints of this nature
and therefore had examined a great many cases.   Both Dr.
Kelly and Dr. Seippel testified that on their examination
they found the girl's hymen torn in several places, and that
in their judgment someone had had sexual intercourse with
her and her condition was not due solely to menstruation,
and Dr. Kelly testified the private parts were inflamed as
if from external violence.   Two witnesses testified that they

had seen the complaining witness at a dance two evenings after the alleged offense occurred, and she herself admitted that she had been there.

There is no dispute as to whether the girl was at plaintiff in error's house on the day in question, the only conflict in the evidence as to that matter being whether it was in the forenoon or afternoon. The evidence also seems to be clear that plaintiff in error threw her onto the bed while she was there making the bed for him. While the girl testified that she kept crying out while he was mistreating her, all the witnesses for the plaintiff in error testified that they heard no outcry. The testimony also shows that the girl at the first made no complaint. The chief question in dispute is whether plaintiff in error had sexual intercourse with the complaining witness. The jury heard all the evidence and it was a question peculiarly for them to pass upon. They saw and heard the witnesses and must necessarily have believed some and disbelieved others, as the evidence is clearly contradictory. We have frequently said that the verdict of a jury on a question of fact will not be disturbed unless it is palpably contrary to the weight of the evidence. *People* v. *Bond,* 281 Ill. 490; *People* v. *Hohimer,* 271 id. 515; *People* v. *Grosenheider,* 266 id. 324.

The police officer who arrested Jarecki testified that two witnesses who testified on this trial for plaintiff in error were not permitted to testify by the judge who presided at the preliminary hearing because the judge said they were drunk. The testimony that these witnesses were not permitted to testify on the preliminary hearing because they were intoxicated was improperly admitted, but we do not think the error was so prejudicial as to require a reversal of this case.

The authorities cited by counsel for plaintiff in error questioning the credibility of the prosecuting witness because she made no complaint to her mother immediately after the alleged crime do not apply here. In the cases

cited, where the complaining witnesses were under the age of consent, the facts are so different as not to be in any way controlling in this case.

We find no reversible error in the record. The judgment of the criminal court will be affirmed.

*Judgment affirmed.*