THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RICHARD THOMPSON, Plaintiff in Error.

*Opinion filed June 16, 1926.*

1. CRIMINAL LAW—*when verdict and judgment will not be set aside on review of evidence.* The Supreme Court will not disturb a verdict nor reverse a judgment of conviction on the ground that the evidence, which is conflicting, is insufficient to convict, unless the verdict is palpably contrary to the weight of the evidence or the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of the defendant's guilt.

2. SAME—*credibility of witnesses is for the jury—alibi.* The credibility of the witnesses is the special province of the jury to determine, as they have opportunity of observing their appearance on the stand, their apparent honesty, intelligence, fairness, character, candor and readiness to answer; and where the defense is an alibi and the case depends upon the credit to be given the respective witnesses, those for the defense testifying in support of the alibi and those for the prosecution identifying the defendant as a participant in the crime, a verdict finding the defendant guilty will not be disturbed on review unless the evidence is so unsatisfactory that there is a reasonable doubt of the defendant's guilt.

3. SAME—*when defendant cannot, on review, complain of trial after flight of co-defendant.* A defendant cannot, although represented by different counsel in the Supreme Court, complain that the trial court proceeded with his trial after his co-defendant, who was on bail, disappeared during the trial, where his counsel, selected by himself, failed to object or to ask leave to withdraw a juror and for a continuance, so as to give the defendant a separate trial by another jury.

4. SAME—*when defendant cannot, on review, complain of failure of his counsel to protect his interests during trial.* While the trial court should, where inexperienced counsel are appointed to represent the defendant, of its own motion refuse to admit extremely prejudicial evidence if counsel fail to object, yet if the defendant has selected his own counsel a court of review will not, upon a change of counsel, consider the question whether if objections had been made or questions raised on the trial a different judgment might have resulted, as negligence of counsel whom the defendant has employed cannot be relied upon for reversal.

5. SAME—*when instruction as to alibi is proper.* An instruction that proof of an alibi must cover the whole of the time of the commission of the crime, so as to render it impossible, or highly improbable, that the defendant could have committed the crime, and that unless the proof covers such period of time the defense is not available, is not improper as indicating to the jury that in the opinion of the court there was some doubt as to whether the whole time was covered by the proof.

6. SAME—*when instruction is not improper as excluding direct testimony of alibi.* An instruction that the defendant, to maintain an alibi, must support it by such facts and circumstances as are sufficient, when considered in connection with all the other evidence in the case, to create in the minds of the jury a reasonable doubt of guilt, is not improper as excluding direct testimony of an alibi.

THOMPSON, J., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. HOSEA W. WELLS, Judge, presiding.

DARROW, SMITH, CRONSON & SMITH, and WILLIAM H. HOLLY, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Richard Thompson and Harold Whitaker were indicted by the grand jury of Cook county for robbery with a gun. Isadore H. Gross owned a drug store at 4656 Wentworth avenue, Chicago, and on the morning of February 23, 1925, the store was opened about eight o'clock by a negro porter, Haywood Bell, eighteen years old, and Edward Weber, a white boy fourteen years old. Shortly after the store was opened, somewhere between 8:00 and 8:30, two men entered the store. After remaining there a little while one of them inquired where the proprietor was. He was told the proprietor was not in at that time, and the boy, Weber,

inquired if he could do anything for the man. One of the men pulled out two pistols and ordered the boys to move into the back of the store and make no noise. The men searched the store, one of them standing guard over the boys. They found five cases of whiskey, three pints of whiskey and ten gallons of alcohol, which they caused to be taken to their automobile in the rear of the store. They also secured more than $30 in money from the store and drove away with the money and liquor. Subsequently Thompson and Whitaker were arrested in a room in the Southmoor Hotel and indicted for the robbery of the store. They were placed on trial, and while the trial was in progress, Whitaker, who was out on bail, disappeared. The trial proceeded in his absence, and the jury returned a verdict finding each of the defendants guilty of robbery and that at the time he was armed with a pistol. The court overruled Thompson's motions for a new trial and in arrest of judgment and sentenced him to the penitentiary. He has sued out a writ of error to reverse the judgment on the grounds (1) the evidence was insufficient to sustain it; (2) the condition of the proof is such that to sustain the judgment the rulings of the court were required to be accurate and the court erred in its rulings; (3) when Whitaker fled during the progress of the trial the case should have been discontinued and Thompson granted a separate trial; (4) the argument of counsel for the People was unfair and prejudicial; (5) the court erred in giving instructions upon the subject of alibi.

Briefly stated, Bell and Weber testified two men, whom they identified at the police station about two weeks after the robbery, and again at the trial, as Thompson and Whitaker, came into the store soon after Bell opened it. After remaining a little while one of them inquired for the "boss" and was informed that he was not at the store. Whitaker ordered them back to the rear of the store and followed them there, with a gun in each hand. He asked them for

two cans of money, but they could not tell him where they were. Thompson came back where the witnesses were, with an automatic pistol in his hand. While he stood guard over the boys Whitaker searched drawers and other places in the store and took money from the cash register. The men opened the liquor room and ordered Bell and Whitaker to carry out of it five cases of whiskey, three pints of whiskey and ten gallons of alcohol. The men put Bell and Weber in a room, fastened it, and carried the liquor and alcohol to a truck in the alley in the rear of the store and drove away. A Baby Ben alarm clock in the store was missing when the witnesses came back into the store. They called Gross, the proprietor, who came to the store in a short time. He testified to the whiskey and alcohol being missing. Thirty-six dollars in money and a small dark-faced clock with radium numerals were also missing. Gross testified he was acquainted with George Mallis; that Mallis was in his store the night before it was robbed and saw the witness put some money in cans but did not see where he put them. Later one evening the witness went to the Southmoor Hotel with police officers, about two weeks after the robbery. Lehart and Smith were the officers. The alarm clock taken from his store was on the dresser in the room they entered. It looked like the clock taken from his store. Police officer Smith testified that March 14 he went to the Southmoor Hotel with policemen Oates, Lehart and Kaiser. They went to a room on the fifth floor, where they found a man by the name of Melcher. They saw there a lot of cartridges in different drawers. There were four different sizes. There were a lot of empty liquor bottles and a holster for a pistol, but they found no weapons. They saw the clock there. They stayed in the room until half-past twelve or one o'clock. George Mallis, Thompson and Whitaker came into the room. The officers took charge of them and took an automatic revolver from Thompson. That was all the weapon they found on the

men. The officers took them to the police station. Bell and Weber saw Thompson and Whitaker at the police station in the witness' presence. There were three or four shells in the gun taken from Thompson. Policeman Oates testified substantially the same as Smith. The clock, the pistol taken from Thompson and cartridges found in the room were introduced in evidence.

Thompson, in his own behalf, took the witness stand and testified he was born in Illinois and went to college two years after finishing the public schools. He had been engaged a number of years as a salesman and had known Whitaker since, in November, 1924. Witness lived in Wheaton, Illinois, in February, 1925, and roomed at the Southmoor Hotel. He left his home at Wheaton Monday morning, February 23, on an express train about 7:22, which was due to arrive in Chicago at 8:10. The train arrived about 8:20. He had an appointment with Pound, an automobile salesman, to meet at the depot, and Pound was at the station when witness arrived. They had a cup of coffee and a bite to eat at the lunch counter and went from there to Pound's show rooms, between Twenty-fourth and Twenty-fifth streets, on Michigan avenue, and did not leave the show rooms until after ten o'clock. Defendant went to his office and spent several hours there. The night he was arrested he spent the time until quite late with the chairman of the Albany Park Improvement Association trying to interest him in the products defendant was selling. On his way to his room at the hotel he met with Whitaker, who was driving a car, and defendant got in the car and rode with Whitaker to the hotel. When they arrived at the hotel Whitaker and Mallis went up-stairs and defendant remained a few minutes talking with the proprietor. The clerk of the hotel handed defendant a package wrapped in newspaper and told defendant a gentleman left it for him. When defendant opened the package it was his own gun, which he put in his pocket and went up-stairs to his room

and was taken in charge by the officers, who searched him and took his gun from him. Defendant testified he at one time had been a salesman for bullet-proof vests, and he had loaned his gun in August, 1924, to another salesman in the same line. The salesman to whom the gun was loaned was H. W. Johnson. Defendant testified he engaged a room at the Southmoor Hotel, where he spent from two to four nights a week but never stayed there over the week end. Defendant testified he last saw Johnson in Kewanee, Illinois. Johnson did not know he was at the Southmoor Hotel, and the clerk of the hotel did not tell defendant who the party was that left the gun for him at the hotel.

Ruth Hannett, a sister of defendant, testified she resided at 4246 Sheridan road with her husband; that she was at defendant's home in Wheaton on February 22 and had breakfast with him the morning of the 23d, about seven o'clock. He left home immediately after breakfast. It must have been around 7:30 or 7:45. An express train makes the trip from Wheaton to Chicago in about fifty minutes and the local requires sixty minutes.

Gilbert Pound, a witness for defendant, testified he met Thompson the morning of February 23 at the station, probably twenty-five minutes after eight o'clock, and the two went together to the Durant Motor Company's place, at 2440 Michigan avenue. He testified he saw Thompson in the evening four or five days prior to February 23 and saw him again after he was in trouble. Witness had talked to some people about the case and to Thompson's sister. He took some cards to Thompson at the jail, and in the course of their talk he was reminded by Thompson that it was February 23 he met Thompson at the station. He did not remember it prior to that time. Thompson was in witness' company from the time he met him at the station until 10:15 or 10:30.

Jensen, manufacturer of concrete products, and prior to engaging in that business sales-manager for J. A. Ross &

Co., paving contractors, testified he was well acquainted with defendant. He had known him about four years. They had worked together. He had employed Thompson as a salesman, beginning in September, 1923. He testified Thompson's general reputation for being a law-abiding citizen was good.

The verdict of a jury on questions of fact will not be disturbed unless palpably contrary to the weight of the evidence. (*People* v. *Jarecki,* 291 Ill. 80; *People* v. *Horchler,* 231 id. 566.) Courts are reluctant to substitute their opinion for that of the jury upon controverted questions of fact. To justify this court in reversing on the ground that the evidence was insufficient it must appear that the finding of the jury is not sustained by the evidence or that it is palpably contrary to the decided weight of the evidence. (*Steffy* v. *People,* 130 Ill. 98.) A court of review will not reverse a judgment of conviction in a criminal case unless satisfied there is a reasonable doubt of defendant's guilt. (*Flanagan* v. *People,* 214 Ill. 170.) A judgment of conviction will not be reversed merely because the testimony is conflicting, but will only be reversed where the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *People* v. *Martellaro,* 281 Ill. 300; *People* v. *Hohimer,* 271 id. 515.

There is no doubt that Gross' store was robbed. If the testimony of the two boys is true there is no doubt of the guilt of the defendants. The testimony is not so unreasonable, improbable or unsatisfactory as of itself to justify a reasonable doubt of the defendants' guilt and there is no reason to suppose that it is intentionally false, but it is vigorously argued that the witnesses may easily have been mistaken; that cases of mistaken identity are of frequent occurrence, and the circumstances which have a tendency to weaken their testimony are pressed forcibly upon our attention, the good character of the plaintiff in error, the evidence of an alibi, the youth of the witnesses, the fact that

they had seen the robbers but once, and all the circumstances surrounding their identification of the defendants. The question thus presented is strictly one of the credit to be given to the witnesses for the prosecution and the defense, respectively. This question it is the special province of the jury to determine. The appearance of the witnesses for the prosecution on the witness stand, their apparent honesty, intelligence, fairness, character, candor and readiness to answer, may have been convincing of their truthfulness and accuracy, while the lack of these qualities, or some of them, may have tended to discredit the testimony of the plaintiff in error and his witnesses, or some of them. The jurors were convinced beyond a reasonable doubt, and the trial judge by denying the motion for a new trial and entering judgment against the plaintiff in error has certified his approval of the verdict. In *Schroeder* v. *People,* 196 Ill. 211, we refused to reverse a conviction of robbery based upon the identification of the accused by a single witness though the defendant and three other witnesses testified to facts tending to establish an alibi. It was for the jury to determine whether the witness was worthy of belief or was or was not mistaken. So in *Rogers* v. *People,* 98 Ill. 581, a conviction of burglary was affirmed where the only testimony tending to connect the defendant with the burglary was that of a boy ten years old, who identified the defendant as being present at the scene of the crime though the defendant and several companions testified to an alibi. In *People* v. *Boucher,* 303 Ill. 375, also, the conviction of robbery rested upon the identification of the defendant by a single witness and the defense was an alibi supported by the testimony of several witnesses. The court, in affirming the judgment, said: "The court will not reverse a judgment in a criminal case upon the ground that it is contrary to the evidence unless it clearly appears that there is a reasonable doubt of the defendant's guilt, and it cannot be said that there is a reasonable doubt of the defendant's

guilt merely because the evidence is contradictory or because more witnesses testify in favor of the defendant than in favor of the prosecution." The case depends entirely upon the credit to be given the respective witnesses, and we cannot say upon this record that the evidence is so unreasonable and unsatisfactory that there is a reasonable doubt of the plaintiff in error's guilt.

It is contended by counsel for the plaintiff in error, who did not appear in the trial court for either of the defendants, that after Whitaker's disappearance his counsel should have asked to withdraw a juror and continue the case, and when he did not do so the court should have suggested such procedure, thus granting the plaintiff in error a separate trial by a jury which knew nothing of the circumstance of Whitaker's flight. It is further suggested that the plaintiff in error knew nothing of his rights and the court should have advised him. It is further argued that evidence was received, which was incompetent against the plaintiff in error, of Whitaker's threats to witnesses and of his flight, and that the assistant State's attorney in his argument improperly called attention to this evidence and made other improper comment and argument. This evidence was competent against Whitaker, who, though absent, was still on trial, no objection was made to it and no instruction was asked by the plaintiff in error to limit it to Whitaker and not consider it as against the plaintiff in error. No objection was made at any time to the argument of the State's attorney and no ruling of the court in regard to it. The defendants were represented each by separate counsel of his own choice, capable, so far as the record indicates, of properly caring for their clients' interests in the trial. It was not the province of the court to act as attorney for the defendants or either of them, to exclude evidence not objected to, to suggest to counsel objections to evidence or to procedure or a different conduct of their clients' case. Persons accused of crime have the right to choose their

own counsel and method of procedure in the conduct of their defense within lawful bounds, and a court of review will not, upon a change of counsel, consider the question whether if objections had been made or questions raised which were not made or raised on the trial a different judgment might have resulted. If objections had been made the court would perhaps have decided in accordance with the views of counsel who now represent the plaintiff in error and possibly a different verdict would have followed, but we cannot for that reason set aside the verdict upon an issue which counsel for the defendants submitted to the jury upon evidence to which they did not object and argument to which also they offered no objection. It is true that we have held that where young and inexperienced counsel have been appointed to defend a person accused of crime and incompetent evidence of an extremely prejudicial character is offered by the prosecution and is not objected to by the counsel appointed to defend, the court should on its own motion refuse to admit the evidence. (*People* v. *Blevins,* 251 Ill. 381.) It was expressly stated, however, that such a case was not to be treated as a case where the party is able to employ counsel and selects his own lawyer. Failure of counsel, whom a defendant has employed, to exercise great care and skill in the trial court does not change the law in regard to the review of the record of that court or justify the reversal of a judgment on the ground that defendant had not been properly represented in the trial court. *People* v. *Anderson,* 239 Ill. 168; *People* v. *Barnes,* 270 id. 574; *People* v. *Schulman,* 299 id. 125.

It is insisted that the court erred in giving the People's third and fourth instructions, as follows:

3. "The court instructs the jury that before a defendant can avail himself of the defense of an alibi the proof must cover the whole of the time of the commission of the crime so as to render it impossible, or highly improbable,

that the defendant could have committed the act, and unless the proof in a case covers the whole time, so as to render the commission of the crime by a defendant impossible, or highly improbable, then that defense is not available to such defendant.

4. "The court instructs the jury that where an alibi is relied on as a defense, in order to maintain it it is incumbent on the defendant to support it by such facts and circumstances as are sufficient, when considered in connection with all the other evidence in the case, to create in the minds of the jury a reasonable doubt of the truth of the charge against the defendant."

The objection made to the first of these instructions is, that there was no reason for giving it because the evidence did cover the whole time and the giving of the instruction would cause the jury to believe that in the opinion of the court there was some doubt as to whether the whole time was covered. In *People* v. *Schladweiler,* 315 Ill. 553, the first part of this instruction was held to be a proper definition of an alibi. The remainder of the instruction is not a statement of the amount of proof required but is merely a repetition of the first part in a slightly different form. It adds nothing to the instruction. The objection made to the other instruction is, that it is the duty of the jury to consider whatever direct testimony to an alibi there may be and it is not incumbent on the defendant to support it by facts and circumstances. Whatever may be the direct testimony of an alibi it must be testimony to facts and circumstances, and the instruction is no more than that it is incumbent on the defendant to introduce evidence sufficient, when considered with all the other evidence in the case, to create in the minds of the jury a reasonable doubt of the truth of the charge against the defendant.

The judgment is affirmed.

*Judgment affirmed.*

Mr. Justice Thompson, dissenting.