(No. 19316.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN SHEETS *et al.* Plaintiffs in Error.

*Opinion filed February 20, 1929.*

EVERETT JENNINGS, for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, ROBERT E. CROWE, State's Attorney, and JAMES B. SEARCY, (EDWARD E. WILSON, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiffs in error, John Sheets, William Semenick and Sam Settipina, with Ben Barretti, were charged in the criminal court of Cook county with the robbery of Ernest M.

Arnold of $70 in money and other property, while armed with pistols. Barretti had given bond and his bond had been forfeited at the time of the trial. Plaintiffs in error were convicted. The indictment charged the offense to have been committed on the 9th day of August, 1927. Plaintiffs in error bring the cause here for review, contending that the verdict is not sustained by the evidence, and that the court erred in its rulings on the admissibility of evidence and in instructing the jury.

Arnold testified that he was a deputy sheriff of Cook county, and that about one o'clock on the morning of August 9, 1927, he entered a road-house in the village of Niles, at the corner of Waukegan and Milwaukee avenues, known as the White House, for the purpose of getting food; that on entering he was confronted by several men with shotguns and revolvers, who demanded that he hold up his hands; that he at first thought it was a joke and told them that he was one of the county boys, but was told to go into the kitchen and lie down on the floor; that realizing it was not a joke he went into the kitchen, where he found four or five men lying on the floor; that he did likewise; that his revolver, black-jack and star and $70 or $80 in money were taken from him while he was on the kitchen floor; that four or five days later he recovered his star at the Racine avenue police station, and several weeks afterwards he identified plaintiffs in error Sheets and Settipina at the detective bureau. He testified that the robbery occurred on the morning of August 9; that he could not tell the date exactly, but thought it was on Tuesday morning, August 9. Dominick Wilhelm testified that he was tending bar in the road-house, and that on Tuesday morning, August 9, the house was held up; that Arnold, and another officer who at that time was in the toilet, were compelled to go into the kitchen. He identified Barretti at the police station later but did not identify any of the plaintiffs in error.

After these witnesses had testified to the robbery, the trial judge announced that owing to a misunderstanding the State had no other witnesses present and would not have until the following day, and that to avoid loss of time the defense would proceed with its case and he would permit the People to introduce other witnesses the next morning. Thereupon Sheets took the stand and testified that on October 30, 1927, he was arrested and taken to the Harrison street police station, where the witness Arnold identified him and also identified Semenick. He denied that he had at any time, in company with other plaintiffs in error or anyone else, held up the patrons of the White House or that he had ever been in that building. He further testified that shortly after midnight on the morning of Tuesday, August 9, 1927, he, together with Semenick and Settipina, were arrested, and at ten minutes past midnight he was at the East Chicago avenue police station in company with the other plaintiffs in error; that they were arrested by officers Fitzpatrick and Badgley, and that he remained in the station until six o'clock in the evening of August 9 and at ten o'clock the next day was in court. Officer Badgley corroborated this testimony. The State the next morning introduced the balance of its case in chief, the witnesses consisting of John W. Kath, a farmer living near Niles; Leo Koelper, also a resident of that community; Emil Rutherback, a police officer of Niles; and George Ulrich, a sergeant of highway police. Kath testified that on Wednesday morning, August 10, about one o'clock, he, with Koelper, stopped at the White House to get food; that while he was eating a sandwich three men came in at one door and two men at another door; that the men all had guns; that they ordered those in the place to put up their hands and go into the kitchen and lie down. He identified Sheets. Koelper testified to the same state of facts, except that he testified it was about midnight on Tuesday, August 9. He identified Settipina. Rutherback testified

that the occurrence took place on August 10, about eight minutes to one in the morning; that he went to the White House and there were four men in the place; that he went to the wash-room, and while there two men with guns in their hands came to the wash-room and ordered him to put up his hands; that he was hit on the jaw with a gun by Semenick and was told to go to the kitchen and lie down. He also identified Settipina, and testified that these men took his star, gun and some money from him; that his star was returned to him at the Racine avenue station but he did not recover his gun. Ulrich, a deputy sheriff, testified that he was sergeant of highway police in August, 1927; that his station was approximately three and one-half miles north of the village of Niles; that on August 10, 1927, at 1 :20 A. M., he received a telephone call from Arnold reporting an occurrence at the White House restaurant.

Semenick and Settipina testified to the same facts as to their arrest as did Sheets, and both denied being present or taking part in the robbery.

In support of the contention of plaintiffs in error that the verdict is not supported by the evidence, it is argued that the witnesses for the State did not agree as to the time when the robbery occurred; that those testifying on the first day of the trial fixed the hour of the robbery at one o'clock on the morning of August 9, at which time the evidence showed plaintiffs in error were in custody in the city of Chicago, and that after they had proved an alibi other witnesses for the State testified that the crime was committed on the morning of August 10; that since this is true there was reasonable doubt as to the guilt of the defendants. There is no doubt that the robbery with which plaintiffs in error were charged was committed. There is no doubt as to the identification by the witnesses for the State of plaintiffs in error. The ground upon which plaintiffs in error base their claim of reasonable doubt arises from the difference in the dates given by the witnesses

for the State. There is no doubt that plaintiffs in error from shortly after twelve o'clock on the morning of August 9 until the following evening were in a police station in Chicago. They make no attempt to tell of their whereabouts from six o'clock on the evening of August 9 until ten o'clock on August 10, when they appeared in court. It seems clear that the witnesses who testified to the robbery occurring at one o'clock on August 9 were mistaken as to the day. Certain it is that the jury were justified in so considering their testimony. Whether plaintiffs in error were present and committed the crime as described by witnesses for the State was a question of fact to be decided by the jury, and we would not be justified in holding that the evidence does not support their verdict.

It is also contended that the court erred in admitting the testimony of George Ulrich, a highway policeman, that he received a telephone communication from the witness Arnold reporting an occurrence at the White House at 1:20 A. M. on August 10. The abstract does not disclose that any objection was made to this testimony. Not having objected to it plaintiffs in error cannot base error upon its admission. *Lipsey* v. *People, 227* Ill. 364.

It is also contended that the trial court erred in giving the following instruction concerning an alibi:

"The court instructs the jury that before a defendant can avail himself of the defense of an alibi, the proof must cover the whole of the time of the commission of the crime so as to render impossible, or highly improbable, that the defendant could have committed the act, and unless the proof in a case covers the whole time, so as to render the commission of the crime by a defendant impossible or highly improbable, that defense is not available to such defendant."

The evidence as to the alibi does not cover the time at which or before which the crime was proved to have been committed. The instruction defines an alibi and has

been repeatedly approved. *People* v. *Thompson,* 321 Ill. 594; *People* v. *Schladweiler,* 315 id. 553.

Plaintiffs in error also object to People's instruction concerning the credibility of witnesses. This was a stock instruction which has been frequently approved, and it was not error to give it.

There being no error in the record the judgment will be affirmed.

*Judgment affirmed.*