Ayres Boal and Lesley Boal, Appellees, v. City of Chicago, Appellant.

Gen. No. 40,549.

Opinion filed October 25, 1939.

BARNET HODES, Corporation Counsel, for appellant; ALEXANDER J. RESA, Assistant Corporation Counsel, of counsel.

URION, BISHOP & SLADKEY, of Chicago, for appellees; HOWARD F. BISHOP and ROBERT F. DEWEY, of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.
This is an action by the plaintiffs for the recovery of damages alleged to have resulted to real estate owned by the plaintiffs and situated at 8–10 East Kinzie street in Chicago, Illinois, in consequence of the construction of the north viaduct or approach to the bridge

spanning the Chicago river at Wabash avenue, the change of grade of certain streets and sidewalks, and of a portion of an alley adjacent to the plaintiffs' property, incident to the construction of the public work, and the construction of the ramp in the south half of the East Kinzie street. The case was tried before the court and a jury. The jury returned a verdict finding the issues for the plaintiffs and assessing the damages at $8,500. Judgment was entered on the verdict for the plaintiffs after the court had denied defendant's motions for a new trial and in arrest of judgment. It is from this judgment that the defendant appeals.

From the facts in the record, there is a map in evidence which shows the locality in which the plaintiffs' property is situated. The first east and west street north of the Chicago river at this point is East Kinzie street upon which the plaintiffs' property abuts. The next east and west street north of East Kinzie street is East Austin avenue, and the next east and west street north of East Austin avenue is East Illinois street. North State street runs north and south and crosses the river. The next north and south street east of North State street was formerly named Cass street. It is now named North Wabash avenue. Cass street never extended south of East Kinzie street. The thoroughfare which is known as Kinzie street west of North Wabash avenue is known as East North Water street east of North Wabash avenue. The plaintiffs' property is known as 8–10 East Kinzie street. It is on the north side of East Kinzie street and faces south. It has a frontage of 40 feet and a depth of 100 feet extending from the north line of East Kinzie street to the south line of an alley which runs east and west through the block from North State street to North Wabash avenue. This alley is 18 feet wide. The west line of the plaintiffs' property is 75 feet east of the east line of North State street, and the east line of the plain-

tiffs' property is 115 feet east of the east line of North State street. The building on the plaintiffs' property is a five-story structure, and was built pursuant to a building permit issued March 2, 1885, and was therefore more than 45 years old at the time of the completion of the public work involved. The improvement was made under the provisions of an improvement ordinance passed by the city council of the city of Chicago on July 29, 1930. The ordinance is in part as follows:

"An ordinance providing for the construction of a bridge across the Main Branch of the Chicago River at North Wabash avenue in the City of Chicago, with approaches thereto, and for changing the north dock line of the Main Branch of the Chicago River, and for the conveyance by the Chicago and North Western Railway Company to the City of Chicago of lands now owned by said railway company, and for granting easements by the Chicago and North Western Railway Company to the City of Chicago for elevated street purposes over lands now owned by said railway company, and for granting various easements by the City of Chicago to said Chicago and North Western Railway Company in and along streets and alleys, and for the vacation of various streets and alleys and of a portion of the bed of the Main Branch of the Chicago River in favor of said Chicago and North Western Railway Company, and for conveyance by the City of Chicago to said Chicago and North Western Railway Company by deed or deeds of its right, title and interest in and to such streets, alleys and river bed to be vacated hereby."

The elevation at which the bridge constructed under this ordinance had to be built was determined by a requirement that there be an underbridge clearance of 17 feet over the railroad tracks. The elevation at which the bridge was constructed was determined by the United States government. The Chicago and North Western Railway Company owned the right of way

along the north bank of the Chicago river and this was covered by railway tracks from the river practically north to Kinzie street. The railroad had been on this property since the year 1840. In order to obtain the right to build this viaduct through and over the railway company's property, it would have been necessary to resort to condemnation proceedings if the right had not been acquired by a settlement, the terms of which the ordinance discloses. An engineer in the employ of the city, who designed the improvement and who testified for the plaintiffs, testified that it was necessary for the city to obtain and occupy some of the land belonging to the railway company and to acquire air rights over some land of the railway company, rights to the surface of which the city did not acquire. This witness also testified that the air rights over the property are worth three times as much as the right to the surface, and that he considered the exchange of titles and easements between the city and the railway company entirely equitable. The viaduct when constructed came down to the old level of Cass street at East Grand avenue, which is one block north of East Illinois street and three blocks north of the plaintiffs' property.

East Kinzie street, East Austin avenue and East Illinois street were depressed so as to pass under the viaduct and allow sufficient clearance, and the downward incline on Kinzie street toward the viaduct commenced at approximately the west line of the plaintiffs' property. Between North State street and the west line of the plaintiffs' property the surface of Kinzie street remained exactly the same as it was before. At the east line of the plaintiffs' property, the new grade of East Kinzie street is .76 of a foot lower than it was. A change was made in the sidewalk level beginning at a point approximately 25 feet west of the east line of the plaintiffs' property. From that point to the east line of the plaintiffs' property the sidewalk was depressed .8 of a foot or about 9½ inches

over a distance of 25 feet. No change was made in the sidewalk west of the plaintiffs' property. East Kinzie street had declined downward toward the east from North State street to a slight extent before the improvement. The new incline of this grade is what is called a 4 per cent grade, which means that it descends 4 feet in 100 feet. Beneath the viaduct, East Kinzie street was depressed 7 feet below its original level to allow for necessary clearance between the viaduct and the street. No change was made in the width of East Kinzie street. A slight change was made in the width of the roadway of the lower level of North Wabash avenue under the viaduct. The roadway was formerly 38 feet wide. It was reduced to 36 because the sidewalk level was not changed and as the sidewalks remained at a level higher than the roadway it became necessary to prevent vehicles from touching the sidewalk, to build what are termed wheel guards at the roadway level extending out from the curb 12 inches to prevent the hubs of wheels from bumping the curb or the sidewalk. There were also constructed in North Wabash avenue, three lines of columns supporting the viaduct, one line located in the center line of North Wabash avenue and the other lines of columns located within the sidewalk areas. The columns in the center of North Wabash avenue are approximately 40 feet apart from north to south.

The alley north of East Kinzie street was made to slope downward at a grade of 4 feet in 75 feet commencing at a point 125 feet east of the east line of the plaintiffs' property. No other change was made in the alley. Steps were constructed on the north side of East Kinzie street at North Wabash, which was also sometimes called the upper level of North Wabash avenue. There was formerly a team track or loading track which extended not only east of North State street but west as far as Dearborn street, the next street to the west. It is the position of the plaintiffs

that the team track or loading track is no longer available to them east of North State street.

The improvement was paid for with the proceeds of a bond issue and not by a special assessment.

On the south side of East Kinzie street extending eastward from State street is a garage building owned by the Central Chicago Garages, Inc. It was claimed by the garage company that extensive reconstruction throughout its entire building would be necessary to meet the new grade of East Kinzie street.

On March 18, 1931, the city council of the city of Chicago passed an ordinance entitled:

"An ordinance providing for the construction of a viaduct on East Kinzie street extending westerly from the North Wabash avenue bridge approach, such viaduct to be build at the cost and expense of the property owners hereinafter described, in consideration of and in settlement of the claim for damages of such property owner arising out of the construction of said North Wabash avenue bridge approach and the change in grade of certain streets abutting on the lands of said property owner."

The ordinance recites the passage of the ordinance of July 29, 1930, providing for the construction of the bridge across the Chicago river at North Wabash avenue, with approaches thereto, and for changing the grades of certain streets. It further recites that the grades of North Wabash avenue and East Kinzie street had been changed by depressing the street level of each of said streets; that it was claimed that the right of ingress and egress and the right of access to the garage property had been damaged and affected, to the serious loss and damage of the owner of the property; that the owner of said property "now claims and is asserting a damage claim against the City of Chicago in large amount for such loss, damage and injury"; and that the city of Chicago desires to settle such claim by permitting said property to have direct access to

and connection with the said North Wabash avenue
bridge approach by means of a viaduct to be built upon
and along the said East Kinzie street at the expense
of the said property owner and without expense to the
city of Chicago. It thereupon provides that said via-
duct shall be built and constructed in accordance with
plans and specifications therein referred to and that
it "shall be built and maintained by the owner of the
property above described and without cost or expense
to the City of Chicago." It granted permission and
authority to the Central Chicago Garages, Inc., and its
successors and assigns to build and construct the said
viaduct upon compliance with the provisions of the
ordinance, at its or their own cost and expense. It
provided that in consideration of such permission and
authority the Central Chicago Garages, Inc., and its
successors and assigns release the city of Chicago from
any claim for loss, damage or injury arising from the
change of grade of East Kinzie street or arising from
the vacation of a certain alley and from any and all
claims whatsoever in connection therewith.

Under the ordinance the Central Chicago Garages,
Inc., constructed a ramp along the south half of East
Kinzie street between the westerly limits of the North
Wabash avenue viaduct and a point approximately 118
feet west thereof along the south line of East Kinzie
street and approximately 143 feet along the center line
of East Kinzie street. This ramp has a width of 38
feet 6 inches extending over the sidewalk and over
24½ feet of the street. It is supported by 14 columns,
7 of which are along the center line of the street and
7 in the sidewalk area.

Upon an examination of plaintiffs' brief filed in this
case, we find the plaintiffs admit that the statement of
the case by the defendant—and which the court has
adopted—is substantially correct, but they suggest it
is not stated that the change of grade of the alley im-
mediately to the rear of the plaintiffs' premises was

from a previously level grade to the grade of 5½ per cent at the only entrance to or from Wabash avenue.

The defendant admits that there are presumptions which obtain in favor of a verdict which is "within the range of the testimony," but that those presumptions and intendments do not obtain in the case of a verdict which results from the passion or prejudice of the jury. In *City of Chicago v. McGowan,* 324 Ill. 164, the Supreme Court stated the rule as follows: "In cases of this kind, where the evidence is conflicting and the verdict is within the range of the testimony, courts will not interfere with the finding of a jury as to the amount of damages for the property taken unless there is something in the record showing that they have been influenced by passion or prejudice in reaching their verdict or that there has been some incorrect ruling of law by the trial court which might have misled them. *Sexton v. Union Stock Yard Co.,* 200 Ill. 244; *Lanquist v. City of Chicago,* 200 id. 69; *Forest Preserve District v. Barchard,* 293 Ill. 556."

The same statement of the rule was adopted in *City of Chicago v. Cunnea,* 329 Ill. 288.

The reply of the plaintiffs to this suggestion of the defendant is that from an inspection of the record it shows that the argument of counsel for the plaintiffs was based on facts and documents in evidence, most of which were admitted without objection by the defendant. Plaintiffs' Exhibit 1, the ordinance providing for the construction of the Wabash avenue bridge and for the exchange and conveyance of certain property by and between the city of Chicago and the Northwestern Railway Company, was received in evidence without objection. There was also admitted in evidence plaintiffs' Exhibit 2, without objection, which was the ordinance providing for the construction of the viaduct in Kinzie street in front of the plaintiffs' property, and further providing for a settlement of the claim of the Central Chicago Garages, Inc., against the city for

damages to its property "arising out of the construction of said North Wabash Avenue bridge approach and the change in grade of certain streets abutting on the lands of said property owner." The forgeoing quotation is taken from the title of the ordinance itself.

It appears that the alleged inflammatory remarks complained of by the city were based squarely on facts contained in the ordinances. Plaintiffs' Exhibit 1 recited in detail the exact properties to be exchanged and conveyed by and between the city and the railway. Plaintiffs' Exhibit 2 contains an admission by the city that permission to construct the Kinzie street viaduct on the south half of said street was in consideration of the release by the garage company of its claim for damages arising out of the construction of Wabash avenue bridge. (Which construction work also resulted in damage to the plaintiffs' property.) The property of the plaintiffs was immediately across the street from the Central Chicago Garages. This constitutes an admission of interest by the city.

In support of their position the plaintiffs cite the case of *Chicago & E. I. R. Co. v. Mochell,* 193 Ill. 208, where the court held:

"It is contended that certain remarks of appellee's attorney in argument to the jury were objectionable. The evidence upon which he was commenting had gone to the jury without objection and was therefore properly in the record, and the action of the court in permitting counsel to call the attention of the jury to such evidence does not, in our judgment, constitute reversible error."

It seems from the record that the argument of counsel for the plaintiffs did not contain abusive language which would excite passion or prejudice against any of the parties by the jury, and the plaintiffs contend that the only objection made at the trial was that the argument of counsel was not based upon the evidence. It would appear from the record, as we have already

indicated, that counsel's remarks were not only based upon the evidence, but upon evidence which had been received in evidence without objection. Such argument was entirely proper.

Counsel for the city did make several objections to the argument on behalf of the plaintiffs on the ground that the argument was not based upon matters of record. The city now complains that the court did not rule upon such objections, but advised the jury that one of the court's instructions would bear upon such objections. Pursuant to this statement, the court gave an instruction in the following words:

"The court instructs the jury that if, in the trial of the case, or in the argument, counsel for either party has made any statement or statements in reference to the facts in this case, not based upon the evidence, or to be reasonably inferred from the evidence the jury should wholly disregard such statement or statements." A further instruction given by the court is as follows:

"Neither by these instructions, nor by any words uttered or remarks made by the court during this trial, does or did the court intimate and mean to give, or wish to be understood as giving, an opinion as to what the proof is or what it is not, or what the facts are in this case or what are not the facts therein. It is solely and exclusively for the jury to find and determine the facts; . . ."

It follows that by these instructions the court advised the jury that they were the judges of the evidence and should determine whether or not the argument was borne out by the evidence. By such action the court properly refrained from invading the province of the jury and such action was highly proper. *People v. Strauch,* 240 Ill. 60.

It also appears that the verdict returned by the jury was within the range of the evidence. Ernest H.

Lyons, a real estate expert, testifying on behalf of the plaintiffs, stated that in his opinion the property had suffered damage, by reason of the construction work, in the sum of $23,333. Newton B. Loren, a real estate expert, called by the plaintiffs, stated that in his opinion the damage to the plaintiffs' property was $23,400. The verdict of the jury fixed the damage to plaintiffs' property at the sum of $8,500. Thus, as suggested by the plaintiffs, it would seem that the amount fixed by the jury was well within the range of the evidence.

The city, as contended by the plaintiffs, has admitted in plaintiffs' Exhibit 2 that the change of grade of Kinzie street and loss of accessibility because of the Wabash avenue bridge, damaged the garage property immediately across the street from the plaintiffs' property. By said ordinance it is also admitted that the reason the garage was given permission to construct the viaduct in Kinzie street was in settlement and release of its claim for such damages, and from this exhibit the plaintiffs believe that the city admits that the property of the plaintiffs on the north side of Kinzie street, similarly situated and directly opposite the garage property on the south side of Kinzie street, is also damaged by the change of grade of Kinzie street and the other features of the North Wabash avenue bridge approach. And again they contend that the verdict was well within the evidence. The general rule is that jury verdicts will not be disturbed by reviewing courts unless it appears that such finding cannot be sustained by the evidence. In *Wheeler v. City of Bloomington,* 105 Ill. App. 97, the court said:

"We do not care to go into a discussion of the conflicting evidence heard by the jury. The jury not only saw the witnesses, but viewed the property. Their opportunities for placing a correct estimate upon the relative benefits and damages occasioned by the improvement are so far superior to ours that we are con-

tent to say that their judgment upon the real question at issue before them is of controlling weight with us." See also *People v. Thompson,* 321 Ill. 594.

The defendant contends that in view of the sharp conflict in the evidence as to whether the fair cash market value of the plaintiffs' property has been decreased, the action of the trial court authorizing the jury to consider their view of the premises as evidence in the case requires a reversal of the judgment. The Supreme Court in the case of *Geohegan v. Union El. R. Co.,* 258 Ill. 352, said:

"The jury were instructed that the view of the premises, and the facts acquired from such view, so far as they pertained to the special benefits or damages, if any, sustained by the premises from the elevated railroad, were not evidences to be considered in arriving at a verdict. In condemnation cases the statute provides for a view upon the request of either party, and in such cases it has been held many times that the information derived from such view is to be regarded as evidence in the case. But this is an ordinary common law action, in which the purpose of the view is only to enable the jury to understand the physical situation and apply the evidence to it. The instruction stated the correct rule. *Rich v. City of Chicago,* 187 Ill. 396."

The plaintiffs contend that the testimony by Mr. Sullivan, the city engineer, that the permission by the city for the construction of the viaduct on Kinzie street in front of plaintiffs' property was in consideration of a settlement by the garage company, of its claim for damages against the city arising out of the construction of the Wabash avenue bridge and the interference with the ingress and egress to Wabash avenue. The admission in evidence of plaintiffs' Exhibit 3 is also singled out for objection by the city. This testimony and plaintiffs' Exhibit 3 are merely cumulative and only confirm the statements and facts contained in the ordinances of the city of Chicago (plaintiffs' Exhibits

1 and 2), both of which were admitted in evidence without objection by the defendant. Plaintiffs' Exhibit 2 in clear and concise language states that permission to construct the Kinzie street viaduct in front of plaintiffs' property was granted in consideration of the release of the garage company's claim for damages. If the ordinance was not objectionable, it is difficult to see in what way the testimony of Mr. Sullivan is objectionable, much less how it can be construed to have excited passion and prejudice on the part of the jury. Also, plaintiffs' Exhibit 3 contains nothing which was not set forth in detail in plaintiffs' Exhibit 1, which was also admitted in evidence without objection by the city.

As we have indicated in this opinion, we are inclined to agree with the suggestion made by the plaintiffs. It seems that some of the exhibits to which we have called attention, were admitted in evidence without objection by the city, and being so admitted, of course the plaintiffs would have the right to comment upon the language used and presented to the jury for consideration as to whether the plaintiffs' property had been damaged by the construction work.

Where a city makes an improvement for its own benefit, it is liable for just compensation for the property damaged thereby by change of street grades and the building of viaducts thereon, and the plaintiffs suggest and this court agrees that where the city authorizes a structure upon a public street, which structure causes injury to adjacent property, it will be liable for all the damages resulting, precisely as though it had erected the structure itself. *Stack v. City of East St. Louis,* 85 Ill. 377.

The question now to be considered is whether the plaintiffs' Instruction No. 8 did or did not authorize the jury to consider their view of the premises as evidence. The instruction is as follows: " . . . the probability or improbability of the trust of their several

statements in view of all the evidence, facts and circumstances proven on the trial, including your view of the premises, and from all the evidence and from all the facts and circumstances shown upon the trial, and your view of the premises, determine which of the witnesses are worthy of greater credit; . . .'' Upon this fact the plaintiffs point to the fact that the defendant in its brief has admitted that in eminent domain proceedings the jury may properly consider its view of the premises as evidence. Without waiving plaintiffs' position the plaintiffs contend Instruction No. 8 did not authorize the jury to consider its view as evidence, as such, and point out that the instant case is in fact an eminent domain proceeding and governed by the rules of law ›and procedure applying thereto. The plaintiffs' right to compensation for damages sustained to the property is based upon art. 2, sec. 13 of the Illinois Constitution [Jones Ill. Stats. Ann. Vol. I, p. 196], exactly as is an owner's right to compensation for the actual taking of his property. *Penn Mut. Life Ins. Co. v. Heiss,* 141 Ill. 35; *People v. Kingery,* 369 Ill. 289.

It is worthy of note what the Supreme Court has said is the purpose of having the jury view the premises. In the case of *Geohegan v. Union El. R. Co.,* 258 Ill. 352, cited by the defendant, the court in part said: ''But this is an ordinary common law action, in which the purpose of the view is only to enable the jury to understand the physical situation and apply the evidence to it.'' So that applying the rule of the Supreme Court just referred to, the court in determining the purpose of the view is only to enable the jury to understand the physical situation and apply the evidence to it. And in determining the credibility of the witnesses in a law action of the character involved in this litigation the jury's view of the premises is to enable it to understand the physical situation and apply the evidence thereto, and from the facts acquired determine the veracity of the several witnesses.

Having considered the questions that we believe are pertinent to the issues called to the attention of the court, we are of the opinion that the court did not err in entering judgment upon the verdict of the jury. Therefore the judgment is affirmed.

*Judgment affirmed.*

DENIS E. SULLIVAN, P. J., and BURKE, J., concur.